## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| MIDWESTERN PET FOODS, INC., | : MARKS: WHOLESOMES |
| | :         SPORTMIX WHOLESOMES |
| Appellant. | : SERIAL NOS. 85/598,831 |
| | :           85/598,829 |

Office of the General Counsel
United States Patent and Trademark Office
10B20, Madison Building East
600 Dulany Street
Alexandria, Virginia 22314

ATTN: Ms. Michelle K. Lee, Deputy Director

### NOTICE OF APPEAL TO THE UNITED STATES
### COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Midwestern Pet Foods, Inc. (hereinafter,

"Appellant"), hereby appeals to the United States Court

of Appeals for the Federal Circuit the decision of the

Trademark Trial and Appeal Board of the United States

Patent and Trademark Office entered on September 18,

2014, affirming the refusal to register Appellant's

trademarks WHOLESOMES and SPORTMIX WHOLESOMES pursuant

to Section 2(e)(1) of the Lanham Act, 15 U.S.C.

§ 1052(e)(1), in In re Midwestern Pet Foods, Inc.,

regarding U.S. Trademark Application Serial

Nos. 85/598,831 and 85/598,829. See 37 C.F.R. § 2.145.

- 1 -

Appellant submits herewith a copy of the decision
of the Trademark Trial and Appeal Board of
September 18, 2014 being appealed. In accordance with
Rule 15(a)(4) of the Federal Circuit Rules, three (3)
copies of this Notice of Appeal have been filed
concurrently with the United States Court of Appeals
for the Federal Circuit, together with the Court's
prescribed filing fee. Furthermore, pursuant to
Trademark Rule 2.145(b)(3), one (1) copy of this Notice
of Appeal has been served by hand on the Trademark
Trial and Appeal Board, proof of which is enclosed
herewith.

                                    Respectfully submitted,
                                    MIDWESTERN PET FOODS, INC.


Date: <u>November 17, 2014</u>  By: _____
                                    Timothy D. Pecsenye
                                    BLANK ROME LLP
                                    One Logan Square
                                    130 N. 18th Street
                                    Philadelphia, PA 19103-6998
                                    (215) 569-5619 (t)
                                    (215) 832-5619 (f)

                                    *Attorneys for Appellant*
                                    *Midwestern Pet Foods, Inc.*

- 2 -

## **CERTIFICATE OF SERVICE**

I, Bradford C. Craig, do hereby certify that on November 18, 2014, I caused to be served by hand the foregoing NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT on the following:

Office of the General Counsel
United States Patent and Trademark Office
10B20, Madison Building East
600 Dulany Street
Alexandria, Virginia 22314

Bradford C. Craig

## CERTIFICATE OF SERVICE

I, Bradford C. Craig, do hereby certify that on November 18, 2014, I caused to be served by hand a copy of the foregoing NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT on the following:

Hon. Commissioner for Trademarks
United States Patent and Trademark Office
ATTN: Trademark Trial and Appeal Board
600 Dulany Street
Alexandria, Virginia 22313-1451

Bradford C. Craig

**THIS OPINION IS NOT A PRECEDENT OF THE TTAB**

Oral Hearing: August 5, 2014                    Mailed: September 18, 2014

## UNITED STATES PATENT AND TRADEMARK OFFICE

### Trademark Trial and Appeal Board

*In re Midwestern Pet Foods, Inc.*

Serial Nos. 85598829 and 85598831

Timothy D. Pecsenye and Bradford C. Craig of Blank Rome LLP for Midwestern Pet Foods, Inc.

Seth A. Rappaport, Trademark Examining Attorney, Law Office 103 (Michael Hamilton, Managing Attorney).

Before Taylor, Lykos, and Masiello,
Administrative Trademark Judges.

Opinion by Lykos, Administrative Trademark Judge:

On April 16, 2012, Midwestern Pet Foods, Inc. ("Applicant") filed applications to register on the Principal Register the marks **WHOLESOMES** and **SPORTMIX WHOLESOMES**, both in standard character form, for "pet food" in International Class 31.[1]

The Trademark Examining Attorney has refused registration of the mark **WHOLESOMES** under Section 2(e)(1) of the Trademark Act, 15 U.S.C.

---

[1] Serial Nos. 85598829 and 85598831, alleging a bona fide intent to use the mark in commerce pursuant to Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b). During *ex parte* prosecution of both applications, Applicant amended the basis for its applications to

Serial Nos. 85598829 and 85598831

§ 1052(e)(1), on the ground that the mark is merely descriptive of Applicant's identified goods. In addition, registration of the mark **SPORTMIX WHOLESOMES** has been finally refused in light of Applicant's failure to comply with the Examining Attorney's requirement for a disclaimer of "WHOLESOMES" pursuant to Trademark Act § 6(a), 15 U.S.C. § 1056(a), on the ground that the term is merely descriptive of the identified goods.

Upon final refusal of registration, Applicant filed a timely appeal and request for reconsideration for each application. After the Examining Attorney denied the requests for reconsideration, the appeals were resumed. Inasmuch as these appeals involve common questions of law and fact, and each has been treated in substantially the same manner by the Applicant and by the Examining Attorney, we have consolidated these separate appeals and are issuing a single decision herein. For the reasons explained below, we affirm both refusals to register.

Section 2(e)(1) of the Lanham Act precludes registration of a mark that, when applied to the goods or services of the applicant, is merely descriptive of them. 15 U.S.C. § 1052(e)(1) (2006). "A term is merely descriptive if it immediately conveys knowledge of a quality, feature, function, or characteristic of the goods or services with which it is used." *In re Chamber of Commerce of the U.S.*, 675 F.3d 1297, 102 USPQ2d 1217, 1219 (Fed. Cir. 2012) (quoting *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 82 USPQ2d 1828, 1831 (Fed. Cir. 2007)). The determination of whether a mark is merely descriptive must be made in relation to the goods or services for

Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a), and filed acceptable amendments to allege use and specimens.

Serial Nos. 85598829 and 85598831

which registration is sought, not in the abstract. *In re Chamber of Commerce*, 102 USPQ2d at 1219; *In re Bayer*, 82 USPQ2d at 1831. This requires consideration of the context in which the mark is used or intended to be used in connection with those goods/services, and the possible significance that the mark would have to the average purchaser of the goods or services in the marketplace. *In re Chamber of Commerce*, 102 USPQ2d at 1219; *In re Bayer*, 82 USPQ2d at 1831; *In re Omaha Nat'l Corp.*, 819 F.2d 1117, 2 USPQ2d 1859 (Fed. Cir. 1987). Evidence that a term is merely descriptive to the relevant purchasing public "may be obtained from any competent source, such as dictionaries, newspapers, or surveys." *In re Bayer*, 82 USPQ2d at 1831 (quoting *In re Bed & Breakfast Registry*, 791 F.2d 157, 229 USPQ 818, 819 (Fed. Cir. 1986)).

An examining attorney may require an applicant to disclaim an unregistrable component of a mark otherwise registrable. Trademark Act Section 6(a), 15 U.S.C. § 1056(a). A "disclaimer" is a statement that applicant does not claim exclusive rights to an unregistrable component of a mark:

> ...a disclaimer of a component of a composite mark amounts merely to a statement that, in so far as that particular registration is concerned, no rights are being asserted in the disclaimed component standing alone, but rights are asserted in the composite; and the particular registration represents only such rights as flow from the use of the composite mark.

*Sprague Electric Co. v. Erie Resistor Corp.*, 101 USPQ 486, 486-87 (Comm'r Pats. 1954). As noted above, merely descriptive terms are unregistrable under Trademark Act Section 2(e)(1) and, therefore, are subject to disclaimer if the mark is otherwise registrable. Failure to comply with a disclaimer requirement is grounds for refusal

3

Serial Nos. 85598829 and 85598831

of registration. *See In re Omaha National Corp.*, 819 F.2d 1117, 2 USPQ2d 1859 (Fed. Cir. 1987); *In re Richardson Ink Co.*, 511 F.2d 559, 185 USPQ 46 (CCPA 1975); *In re National Presto Industries, Inc.*, 197 USPQ 188 (TTAB 1977); and *In re Pendleton Tool Industries, Inc.*, 157 USPQ 114 (TTAB 1968).

The issue presented in this case is whether the Examining Attorney has sustained the Office's burden of establishing that the term **WHOLESOMES**, as applied to "pet food," is merely descriptive.

The Examining Attorney argues that the term **WHOLESOMES**, when used in connection with "pet food," immediately conveys to prospective consumers a feature or characteristic of Applicant's goods, namely that the product promotes the pet's "sound health or well-being." In support of the refusals to register, the Examining Attorney's evidence includes the following:

• An entry for the word "wholesome" obtained from the *American Heritage Dictionary of the English Language* (4th ed. 2000), defining the word, in pertinent part, as

> Adj. 1. "Conducive to sound health or well-being; salutary; *simple, wholesome food; a wholesome climate.*"...3. Sound; healthy.[2]

• Applicant's specimen of record consisting of product packaging, stating in relevant part that Applicant's pet food contains "NO corn, No wheat, and No soy;" "Balanced Omega 6 and 3 fatty acids" and "Naturally Preserved."

---

[2] Search results for the word "wholesome" obtained from *The Free Dictionary by Farlex* (www.thefreedictionary.com). Office Action dated May 21, 2012.

4

Serial Nos. 85598829 and 85598831

• Third-party used-based registrations for marks comprised in part of the term **WHOLESOME** and with a disclaimer of that term, for the same goods as Applicant's ("pet food"), the most relevant being WHOLESOME GOODNESS (standard character mark) for "pet food." (U.S. Registration No. 3565421) and WHOLESOME MEDLEY (standard character mark) for "pet food." (U.S. Registration No. 3521984).

• Internet evidence that the adjective "wholesome" is used by competitors to describe and promote their own brand of pet food or pet treats. See for example the following:

> The Wholesome Pet Market: Birmingham's Only Independent Healthy Pet Food Retailer....I carry only the best of raw, dehydrated, freeze-dried, canned and dried foods. I only put products on the shelves that I have fully researched and would bring home to feed my own dog. The store is also full of <u>wholesome</u> treats – nutritional treats for all dogs, even those with allergies and food sensitivities." (www.thewholesomepetmarket.com).

> The NaturaPet website offers Innova New Puppy Food brand which is touted as "high-protein, <u>wholesome</u> nutrition formulated to meet the unique needs of a growing puppy" and Innova NEW Weight Management Adult Dry Dog Food, which is a "nutrient-rich, <u>wholesome</u> formula" that offers 21% less fat than Innova Adult Dog Food and added L-carnitine to facilitate the metabolism of fat. (www.naturapet.com).

> The Tuffy's Pet Food website advertises that "[f]or over 45 years, dog and cat owners have trusted Tuffy's Pet Foods to be fresh and <u>wholesome</u>....Tuffy's fresh, wholesome pet foods are specially formulated to meet the individual needs of pets, keeping them happier, healthier, and more energetic." (www.tuffyspetfoods.com).

Applicant counters that the addition of the letter "s" to the adjective "wholesome" transforms the word into a newly coined designation with no accepted meaning. As Applicant contends, consumers encountering Applicant's mark need to

5

Serial Nos. 85598829 and 85598831

engage in some degree of imagination, thought, or perception before making an association between the invented plural noun **WHOLESOMES** and Applicant's goods. For this reason, Applicant contends, its proposed mark does not immediately describe a significant feature of Applicant's "pet food." Applicant relies primarily on the declaration of Dr. Robert A. Leonard, expert in the field of linguistics,[3] which states in part:

> From an English language perspective, unlike the word "wholesome," the word "WHOLESOMES" is a novel, quasi-invented lexical item with no accepted meaning. *Id.* at ¶ 13.

> Although apparently derived from the word "wholesome," the word "WHOLESOMES" cannot be construed as an adjective.... *Id.* at ¶ 14.

> ...following a basic application of the normal and accepted rules of English grammatical construction, "WHOLESOMES" can only be understood to be a plural noun without a singular counterpart. That "WHOLESOMES" is a plural noun, and not an adjective, shifts the sands of cognition for anyone encountering the word. The final *s* is meaningful in English as it generates a semantic interpretation that "WHOLESOMES" is a noun (and in particular, a plural noun)...The *s* serves to transform an adjective into a newly minted plural noun; it is not merely pluralizing the adjective "wholesome." Consequently, in the case of "WHOLESOMES," the final "s" is a valid and meaningful distinguishing characteristic. *Id.* at ¶ 19.

> That the noun **WHOLESOMES** is an invented word that has novel morphological, grammatical, and semantic value is made clear by virtue of the fact that no dictionaries contain the *noun* "wholesome" or "WHOLESOMES." More importantly, "WHOLESOMES" cannot be found in any dictionary at all, and consequently, cannot be said to have any accepted meaning. For English language speakers, linking the adjective "wholesome" to "WHOLESOMES" would require a leap of "metaphorical grammatical understanding" ... to process a new lexical

---

[3] Dr. Leonard is a tenured professor of linguistics at Hofstra University who has taught, lectured and written articles on the subject for over 30 years. He earned a Ph.D. in Linguistics from Columbia University with specialties in semantic theory and sociolinguistics. He has been qualified and has testified as an expert in linguistics in various state and federal courts. He also serves as a member of the editorial board of the Oxford University Press series *Language and the Law*. Leonard Declaration ¶ 1-11, Ex. A.

Serial Nos. 85598829 and 85598831

> item that may at first glance appear to be an adjective flouting the rules
> we all use to understand the English language. *Id.* at ¶ 20.

Thus, as Applicant maintains, while the word "wholesome" is a well-recognized adjective in the English language and appears in dictionaries and common parlance, the pluralized noun version of the word constitutes a unique source indicator for Applicant's own particular brand of "pet food."

Applicant also criticizes the Examining Attorney's reliance on evidence relating solely to the adjective "wholesome" as irrelevant to whether the invented noun is merely descriptive of Applicant's "pet food." While Applicant concedes that the Examining Attorney's evidence demonstrates that the word "wholesome" is used commonly in the pet food industry to inform consumers that the pet food is healthy and conducive to sound health for their pets, Applicant points out that the record is devoid of any evidence related to the third-party use or dictionary entries of the coined term "wholesomes."

In addition, Applicant analogizes to other marks composed of a term that is derived from a descriptive word that, as a result of its novel spelling or use, has been deemed not to be descriptive of the goods. In support thereof, Applicant has made of record the following relevant third-party registrations on the Principal Register:[4]

---

[4] Insofar as Registration No. 2762655 for the mark PET ESSENTIALS for "pet food and cat litter" was cancelled on April 11, 2014, we have not considered it.

In addition, we did not consider Registration No. 3140553. Applicant mistakenly asserted in its brief that the registered mark is SELECTS in plural form; however, the USPTO records show that the mark is SELECT.

Serial Nos. 85598829 and 85598831

> Registration No. 2243779 for the mark MEATIES for "pet foods and pet treats" in International Class 31;

> Registration No. 3808209 for the mark SELECT ACTIVES ("SELECT" disclaimed) for "pet foods and pet treats" in International Class 31; and

> Registration No. 4329243 for the mark DELECTABLE DELIGHTS for "dog food, cat food, dog treats and cat treats" in International Class 31.

Based on the record before us, we find that the Examining Attorney has satisfied the Office's burden of demonstrating that the term **WHOLESOMES** is merely descriptive when used in connection with "pet food." That is to say, we agree with the Examining Attorney that the coined term **WHOLESOMES** immediately conveys to prospective consumers a quality, feature or characteristic of Applicant's goods, namely, that Applicant's pet food is conducive to the sound health or well-being of the pet.[5] We acknowledge that the record is devoid of any dictionary definitions of the pluralized version of the adjective "wholesome," or for that matter, competitor use of that exact term in the pet food industry. That being said, even though Applicant may indeed be the first and only user of the newly created designation **WHOLESOMES** to identify "pet food," Applicant's proposed mark nonetheless "immediately conveys knowledge of a quality, feature, ...or characteristic" of Applicant's goods within the meaning of Trademark Act Section 2(e)(1). Nothing in the statutory language of that provision imposes the requirement

---

[5] Applicant vociferously argues throughout its brief that under *In re Gyulay*, 820 F.2d 1216, 3 USPQ2d 1009 (Fed. Cir. 1987), to be merely descriptive, a mark must describe a "significant" quality, feature, or characteristic of the goods or services. The Federal Circuit's most recent iteration of the test for descriptiveness set forth in *In re Chamber of Commerce, supra*, however, makes no mention of this requirement. In any event, nothing in the record persuades us that wholesomeness is not a significant feature of food products.

8

Serial Nos. 85598829 and 85598831

that to be merely descriptive, a proposed mark must consist of a commonly used or previously defined word. Rather, the proposed mark must "immediately convey knowledge," and such "knowledge" can be conveyed or communicated to prospective consumers in a number of ways, including by taking a commonly used adjective in the pet food industry and adding the letter "-S." In other words, the essence of the adjective "wholesome" has not been so transformed by the conversion to noun form so as to interfere with the consumer's perception of that term as describing a significant "quality, feature ...or characteristic" of Applicant's particular brand of pet food.

We hasten to add that the pertinent case law imposes no general rule that only marks composed of commonly used or previously defined words may be deemed merely descriptive. *In re Bayer Aktiengesellschaft, supra,* is particularly instructive on this point. In that case, the Federal Circuit affirmed the Board's ruling that the mark ASPIRINA was merely descriptive of applicant's analgesic goods on the grounds that ASPIRINA was simply a variation or misspelling of the generic term "aspirin." The court agreed with the Board's analysis that the close similarity in sound, appearance, and meaning of the mark ASPIRINA to the word "aspirin" immediately conveys the impression to the consuming public that Bayer's analgesics are aspirin-based products.[6] As the court explained:

> *In determining whether ASPIRINA is sufficiently similar to aspirin to render it merely descriptive of analgesic goods, the relevant features of the*

[6] The underlying Board decision did not consider the doctrine of foreign equivalents as argued by the Examining Attorney. Hence the Board declined to engage in a foreign equivalents analysis given its finding that the record demonstrates that ASPIRINA is a merely descriptive variation of aspirin.

Serial Nos. 85598829 and 85598831

> *mark are considered including appearance, sound, and meaning.* The
> Board found that ASPIRINA and aspirin are sufficiently close in
> appearance, sound, and meaning that *"[t]he mere addition of the letter 'A'*
> *at the end of the generic term 'aspirin' is simply insufficient to transform*
> *ASPIRINA into an inherently distinctive mark for analgesics." Final*
> *Decision,* slip. op. at 8, 11. Substantial evidence supports this finding. The
> appearance and meaning of ASPIRINA and aspirin are similar. Adding an
> "a" to aspirin results in virtually no distinction with respect to the visual
> impressions of the terms. Importantly, both terms will be used in
> association with the same analgesic goods in this country. There are,
> however, some differences in sound. ASPIRINA contains four syllables
> and aspirin contains two or three syllables (depending on how it is
> pronounced). ASPIRINA also contains different syllables and the
> emphasis is on the third syllable for ASPIRINA, whereas the emphasis is
> on the first syllable for aspirin. *When the mark ASPIRINA is considered*
> *as a whole, the significant similarities in appearance and meaning of*
> *ASPIRINA and aspirin demonstrate that the Board's finding that*
> *ASPIRINA is merely descriptive of analgesic goods is supported by*
> *substantial evidence.*

*Id.* at 1831-32 (emphasis added).

Applying the same principles here, when we consider the appearance, sound,

and meaning of applicant's proposed mark **WHOLESOMES**, it bears "significant

similarities" to the adjective "wholesome." The addition of the letter "s" and

transformation of the term from adjective to noun fails to render the term

**WHOLESOMES** into an inherently distinctive mark for "pet food." Consumers

encountering Applicant's mark would still perceive it as meaning that Applicant's

pet food is wholesome in nature by promoting the pet's sound health or well-being.

Indeed, in *In re Interco Inc.*, 29 USPQ2d 2037 (TTAB 1993), the Board affirmed the

examining attorney's refusal to register the mark FLORSHEIM LIGHTWEIGHTS

and design for shoes in the absence of a disclaimer of LIGHTWEIGHTS on an

evidentiary record quite similar to the one presented here. In *Interco,* the examining

Serial Nos. 85598829 and 85598831

attorney submitted a dictionary definition of the adjective "lightweight," copies of

two third-party registrations in which the word LIGHTWEIGHT was disclaimed,

and copies of excerpts from various recent newspaper stories showing uses of the

word "lightweight" in relation to shoes. *Id.* at 2038. As the Board reasoned in its

decision:

> We concur with the Examining Attorney that the above evidence,
> especially the dictionary definition and newspaper excerpts, is sufficient
> to establish that not only is the word "LIGHTWEIGHT," as applicant has
> admitted, merely descriptive when applied to shoes, but so is the term
> "LIGHTWEIGHTS". The latter, we believe, would clearly be regarded by
> customers and prospective purchasers of footwear as merely describing
> shoes which are lighter in weight than other kinds of shoes.
>
> As a final consideration, we observe that even if applicant has been the
> first and/or, unlike its competitors, is presently the only user of the term
> "LIGHTWEIGHTS" in connection with shoes, such fact cannot alter the
> merely descriptive significance of the term. [Internal citations omitted].
> Such fact, in short, is simply not dispositive where, as here, the term
> "LIGHTWEIGHTS" unequivocally projects a merely descriptive
> connotation that applicant's shoes are of less than average weight.
> [Internal citation omitted].

*Id.* at 2039.

The reasoning set forth above applies with equal force here. While Applicant

may indeed be the first, and only user of the coined term **WHOLESOMES** used in

connection with "pet food," it nonetheless "projects a merely descriptive connotation"

that Applicant's pet food is salutary for pets. *See id.*

As to the third-party registrations for pluralized marks for pet food and pet

products referenced above, even if these prior registrations had some characteristics

similar to applicant's application, the allowance of such prior registrations does not

Serial Nos. 85598829 and 85598831

bind the Board. *See In re Nett Designs Inc.*, 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001).

Finally, with respect to Applicant's expert's opinion that a consumer would have to engage in "a leap of 'metaphorical grammatical understanding'" in order to comprehend Applicant's mark, we are not persuaded that ordinary consumers would apply to the mark the kind of technical analysis that an expert linguist might perform. Rather, we believe a consumer's apprehension of the descriptive meaning of the mark would be immediate.

In sum, we find that the Office has met its burden of demonstrating that Applicant's proposed mark **WHOLESOMES**, when used in connection with "pet food," is merely descriptive.

**Decision as to Serial No. 85598829:** The refusal to register the mark **SPORTMIX WHOLESOMES** in the absence of a disclaimer of **WHOLESOMES** is affirmed. However, this decision will be set aside if, within two months of the mailing date of this decision, Applicant submits to the Board a proper disclaimer of **WHOLESOMES**. *See* Trademark Rule 2.142(g). The standardized disclaimer format is as follows:

> No claim is made to the exclusive right to use **WHOLESOMES** apart from the mark as shown.

**Decision as to Serial No. 855988331:** The descriptiveness refusal to register Applicant's mark **WHOLESOMES** is affirmed.

## RECEIPT FOR PAYMENT

# United States Court of Appeals
# For The Federal Circuit
### OFFICE OF THE CLERK

Received From _Blink Rome LLP_
**(NAME)**

_Philadelphia, PA_
**(ADDRESS)**

_11/21/14_
**(DATE)**

## NON-APPROPRIATED ACCOUNT

| | AMOUNT | |
|---|---|---|
| Admission Fee | | |
| Filing Fee  85/598,831 | 500 | 00 |
| | | |
| Duplicate Cert. of Admission | | |
| | | |
| | | |
| | | |
| **TOTAL** | 500 | 00 |

Clerk ☐

Deputy Clerk ☑ _Jon 5665_

☐

Cash ☐    Check ☑    MONEY ORDER ☐

28951

## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

In re Midwestern Pet Foods, Inc.   )
Serial Nos. 85/598,829; 85/598,831  )
Filed : April 16, 2012      )
Marks:  WHOLESOMES,   )
     SPORTMIX  WHOLESOMES )

## NOTICE FORWARDING CERTIFIED LIST

A notice of appeal to the United States Court of Appeals for the Federal Circuit was timely filed on November 17, 2014, in the United States Patent and Trademark Office (USPTO) in connection with the above-identified trademark application.  Pursuant to 15 U.S.C. § 1071(a)(3) and Federal Circuit Rule 17(b)(1), the USPTO is today forwarding, to counsel for Appellant, a certified list of documents comprising the record in the USPTO.

Associate Solicitors Christina J. Hieber and Mary Beth Walker represent the Director in this appeal.  Counsel for Appellant may contact Ms. Hieber or Ms. Walker at (571) 272-9035 to arrange for designating the appendix. *See generally* Fed. Cir. Rule 30(b).

If a copy of the notice of appeal and the docketing fee of $500.00 have not been filed with the Federal Circuit, counsel is reminded that a copy of the notice and the docketing fee should be promptly filed with the Federal Circuit.

The mailing address of the Federal Circuit is:

> U.S. Court of Appeals for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, DC 20439

All papers served on the Solicitor in connection with this appeal should be

delivered as follows:

By hand:     Office of the Solicitor
             Madison West
             600 Dulany Street, Room 08C43A
             Alexandria, VA

By mail:     Office of the Solicitor
             Mail Stop 8, P.O. Box 1450
             Alexandria, VA 22313-1450

Respectfully submitted,

**Michelle K. Lee**
Deputy Under Secretary of Commerce for
Intellectual Property and Deputy Director of the
United States Patent and Trademark Office

Date:  December 29, 2014          By:_____

**Shane M. Walter**
Paralegal Specialist
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313-1450
571-272-9035

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| MIDWESTERN PET FOODS, INC., | : | MARKS: WHOLESOMES |
| | : | SPORTMIX WHOLESOMES |
| | : | |
| Appellant. | : | SERIAL NOS. 85/598,831 |
| | : | 85/598,829 |

Office of the General Counsel
United States Patent and Trademark Office
10B20, Madison Building East
600 Dulany Street
Alexandria, Virginia 22314

ATTN: Ms. Michelle K. Lee, Deputy Director

## NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Midwestern Pet Foods, Inc. (hereinafter,

"Appellant"), hereby appeals to the United States Court

of Appeals for the Federal Circuit the decision of the

Trademark Trial and Appeal Board of the United States

Patent and Trademark Office entered on September 18,

2014, affirming the refusal to register Appellant's

trademarks WHOLESOMES and SPORTMIX WHOLESOMES pursuant

to Section 2(e)(1) of the Lanham Act, 15 U.S.C.

§ 1052(e)(1), in In re Midwestern Pet Foods, Inc.,

regarding U.S. Trademark Application Serial

Nos. 85/598,831 and 85/598,829. See 37 C.F.R. § 2.145.

- 1 -

Appellant submits herewith a copy of the decision of the Trademark Trial and Appeal Board of September 18, 2014 being appealed. In accordance with Rule 15(a)(4) of the Federal Circuit Rules, three (3) copies of this Notice of Appeal have been filed concurrently with the United States Court of Appeals for the Federal Circuit, together with the Court's prescribed filing fee. Furthermore, pursuant to Trademark Rule 2.145(b)(3), one (1) copy of this Notice of Appeal has been served by hand on the Trademark Trial and Appeal Board, proof of which is enclosed herewith.

Respectfully submitted,
MIDWESTERN PET FOODS, INC.

Date: November 17, 2014    By: _____

Timothy D. Pecsenye
BLANK ROME LLP
One Logan Square
130 N. 18th Street
Philadelphia, PA 19103-6998
(215) 569-5619 (t)
(215) 832-5619 (f)

*Attorneys for Appellant*
*Midwestern Pet Foods, Inc.*

- 2 -

## CERTIFICATE OF SERVICE

I, Bradford C. Craig, do hereby certify that on

November 18, 2014, I caused to be served by hand the

foregoing NOTICE OF APPEAL TO THE UNITED STATES COURT

OF APPEALS FOR THE FEDERAL CIRCUIT on the following:

Office of the General Counsel
United States Patent and Trademark Office
10B20, Madison Building East
600 Dulany Street
Alexandria, Virginia 22314

Bradford C. Craig

## CERTIFICATE OF SERVICE

I, Bradford C. Craig, do hereby certify that on November 18, 2014, I caused to be served by hand a copy of the foregoing NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT on the following:

Hon. Commissioner for Trademarks
United States Patent and Trademark Office
ATTN: Trademark Trial and Appeal Board
600 Dulany Street
Alexandria, Virginia 22313-1451

Bradford C. Craig

> ## THIS OPINION IS NOT A
> ## PRECEDENT OF THE TTAB

**Oral Hearing**: August 5, 2014                    **Mailed**: September 18, 2014

## UNITED STATES PATENT AND TRADEMARK OFFICE

---

### Trademark Trial and Appeal Board

---

*In re Midwestern Pet Foods, Inc.*

---

Serial Nos. 85598829 and 85598831

---

Timothy D. Pecsenye and Bradford C. Craig of Blank Rome LLP for Midwestern Pet Foods, Inc.

Seth A. Rappaport, Trademark Examining Attorney, Law Office 103 (Michael Hamilton, Managing Attorney).

---

Before Taylor, Lykos, and Masiello,
Administrative Trademark Judges.

Opinion by Lykos, Administrative Trademark Judge:

On April 16, 2012, Midwestern Pet Foods, Inc. ("Applicant") filed applications to register on the Principal Register the marks **WHOLESOMES** and **SPORTMIX WHOLESOMES**, both in standard character form, for "pet food" in International Class 31.[1]

The Trademark Examining Attorney has refused registration of the mark **WHOLESOMES** under Section 2(e)(1) of the Trademark Act, 15 U.S.C.

---

[1] Serial Nos. 85598829 and 85598831, alleging a bona fide intent to use the mark in commerce pursuant to Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b). During *ex parte* prosecution of both applications, Applicant amended the basis for its applications to

Serial Nos. 85598829 and 85598831

§ 1052(e)(1), on the ground that the mark is merely descriptive of Applicant's identified goods. In addition, registration of the mark **SPORTMIX WHOLESOMES** has been finally refused in light of Applicant's failure to comply with the Examining Attorney's requirement for a disclaimer of "WHOLESOMES" pursuant to Trademark Act § 6(a), 15 U.S.C. § 1056(a), on the ground that the term is merely descriptive of the identified goods.

Upon final refusal of registration, Applicant filed a timely appeal and request for reconsideration for each application. After the Examining Attorney denied the requests for reconsideration, the appeals were resumed. Inasmuch as these appeals involve common questions of law and fact, and each has been treated in substantially the same manner by the Applicant and by the Examining Attorney, we have consolidated these separate appeals and are issuing a single decision herein. For the reasons explained below, we affirm both refusals to register.

Section 2(e)(1) of the Lanham Act precludes registration of a mark that, when applied to the goods or services of the applicant, is merely descriptive of them. 15 U.S.C. § 1052(e)(1) (2006). "A term is merely descriptive if it immediately conveys knowledge of a quality, feature, function, or characteristic of the goods or services with which it is used." *In re Chamber of Commerce of the U.S.*, 675 F.3d 1297, 102 USPQ2d 1217, 1219 (Fed. Cir. 2012) (quoting *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 82 USPQ2d 1828, 1831 (Fed. Cir. 2007)). The determination of whether a mark is merely descriptive must be made in relation to the goods or services for

---

Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a), and filed acceptable amendments to allege use and specimens.

Serial Nos. 85598829 and 85598831

which registration is sought, not in the abstract. *In re Chamber of Commerce*, 102 USPQ2d at 1219; *In re Bayer*, 82 USPQ2d at 1831. This requires consideration of the context in which the mark is used or intended to be used in connection with those goods/services, and the possible significance that the mark would have to the average purchaser of the goods or services in the marketplace. *In re Chamber of Commerce*, 102 USPQ2d at 1219; *In re Bayer*, 82 USPQ2d at 1831; *In re Omaha Nat'l Corp.*, 819 F.2d 1117, 2 USPQ2d 1859 (Fed. Cir. 1987). Evidence that a term is merely descriptive to the relevant purchasing public "may be obtained from any competent source, such as dictionaries, newspapers, or surveys." *In re Bayer*, 82 USPQ2d at 1831 (quoting *In re Bed & Breakfast Registry,* 791 F.2d 157, 229 USPQ 818, 819 (Fed. Cir. 1986)).

An examining attorney may require an applicant to disclaim an unregistrable component of a mark otherwise registrable. Trademark Act Section 6(a), 15 U.S.C. § 1056(a). A "disclaimer" is a statement that applicant does not claim exclusive rights to an unregistrable component of a mark:

> ...a disclaimer of a component of a composite mark amounts merely to a statement that, in so far as that particular registration is concerned, no rights are being asserted in the disclaimed component standing alone, but rights are asserted in the composite; and the particular registration represents only such rights as flow from the use of the composite mark.

*Sprague Electric Co. v. Erie Resistor Corp.*, 101 USPQ 486, 486-87 (Comm'r Pats. 1954). As noted above, merely descriptive terms are unregistrable under Trademark Act Section 2(e)(1) and, therefore, are subject to disclaimer if the mark is otherwise registrable. Failure to comply with a disclaimer requirement is grounds for refusal

Serial Nos. 85598829 and 85598831

of registration. *See In re Omaha National Corp.*, 819 F.2d 1117, 2 USPQ2d 1859 (Fed. Cir. 1987); *In re Richardson Ink Co.*, 511 F.2d 559, 185 USPQ 46 (CCPA 1975); *In re National Presto Industries, Inc.*, 197 USPQ 188 (TTAB 1977); and *In re Pendleton Tool Industries, Inc.*, 157 USPQ 114 (TTAB 1968).

The issue presented in this case is whether the Examining Attorney has sustained the Office's burden of establishing that the term **WHOLESOMES**, as applied to "pet food," is merely descriptive.

The Examining Attorney argues that the term **WHOLESOMES**, when used in connection with "pet food," immediately conveys to prospective consumers a feature or characteristic of Applicant's goods, namely that the product promotes the pet's "sound health or well-being." In support of the refusals to register, the Examining Attorney's evidence includes the following:

• An entry for the word "wholesome" obtained from the *American Heritage Dictionary of the English Language* (4th ed. 2000), defining the word, in pertinent part, as

   **Adj. 1.** "Conducive to sound health or well-being; salutary; *simple, wholesome food; a wholesome climate.*"...**3.** Sound; healthy.[2]

• Applicant's specimen of record consisting of product packaging, stating in relevant part that Applicant's pet food contains "NO corn, No wheat, and No soy;" "Balanced Omega 6 and 3 fatty acids" and "Naturally Preserved."

---

[2] Search results for the word "wholesome" obtained from *The Free Dictionary by Farlex* (www.thefreedictionary.com). Office Action dated May 21, 2012.

4

Serial Nos. 85598829 and 85598831

• Third-party used-based registrations for marks comprised in part of the term **WHOLESOME** and with a disclaimer of that term, for the same goods as Applicant's ("pet food"), the most relevant being WHOLESOME GOODNESS (standard character mark) for "pet food." (U.S. Registration No. 3565421) and WHOLESOME MEDLEY (standard character mark) for "pet food." (U.S. Registration No. 3521984).

• Internet evidence that the adjective "wholesome" is used by competitors to describe and promote their own brand of pet food or pet treats. See for example the following:

> The Wholesome Pet Market: Birmingham's Only Independent Healthy Pet Food Retailer....I carry only the best of raw, dehydrated, freeze-dried, canned and dried foods. I only put products on the shelves that I have fully researched and would bring home to feed my own dog. The store is also full of wholesome treats – nutritional treats for all dogs, even those with allergies and food sensitivities." (www.thewholesomepetmarket.com).

> The NaturaPet website offers Innova New Puppy Food brand which is touted as "high-protein, wholesome nutrition formulated to meet the unique needs of a growing puppy" and Innova NEW Weight Management Adult Dry Dog Food, which is a "nutrient-rich, wholesome formula" that offers 21% less fat than Innova Adult Dog Food and added L-carnitine to facilitate the metabolism of fat. (www.naturapet.com).

> The Tuffy's Pet Food website advertises that "[f]or over 45 years, dog and cat owners have trusted Tuffy's Pet Foods to be fresh and wholesome....Tuffy's fresh, wholesome pet foods are specially formulated to meet the individual needs of pets, keeping them happier, healthier, and more energetic." (www.tuffyspetfoods.com).

Applicant counters that the addition of the letter "s" to the adjective "wholesome" transforms the word into a newly coined designation with no accepted meaning. As Applicant contends, consumers encountering Applicant's mark need to

Serial Nos. 85598829 and 85598831

engage in some degree of imagination, thought, or perception before making an association between the invented plural noun **WHOLESOMES** and Applicant's goods. For this reason, Applicant contends, its proposed mark does not immediately describe a significant feature of Applicant's "pet food." Applicant relies primarily on the declaration of Dr. Robert A. Leonard, expert in the field of linguistics,[3] which states in part:

> From an English language perspective, unlike the word "wholesome," the word "**WHOLESOMES**" is a novel, quasi-invented lexical item with no accepted meaning. *Id.* at ¶ 13.

> Although apparently derived from the word "wholesome," the word "**WHOLESOMES**" cannot be construed as an adjective.... *Id.* at ¶ 14.

> ...following a basic application of the normal and accepted rules of English grammatical construction, "**WHOLESOMES**" can only be understood to be a plural noun without a singular counterpart. That "**WHOLESOMES**" is a plural noun, and not an adjective, shifts the sands of cognition for anyone encountering the word. The final *s* is meaningful in English as it generates a semantic interpretation that "**WHOLESOMES**" is a noun (and in particular, a plural noun)...The *s* serves to transform an adjective into a newly minted plural noun; it is not merely pluralizing the adjective "wholesome." Consequently, in the case of "**WHOLESOMES**," the final "s" is a valid and meaningful distinguishing characteristic. *Id.* at ¶ 19.

> That the noun **WHOLESOMES** is an invented word that has novel morphological, grammatical, and semantic value is made clear by virtue of the fact that no dictionaries contain the *noun* "wholesome" or "**WHOLESOMES.**" More importantly, "**WHOLESOMES**" cannot be found in any dictionary at all, and consequently, cannot be said to have any accepted meaning. For English language speakers, linking the adjective "wholesome" to "**WHOLESOMES**" would require a leap of "metaphorical grammatical understanding" ... to process a new lexical

---

[3] Dr. Leonard is a tenured professor of linguistics at Hofstra University who has taught, lectured and written articles on the subject for over 30 years. He earned a Ph.D. in Linguistics from Columbia University with specialties in semantic theory and sociolinguistics. He has been qualified and has testified as an expert in linguistics in various state and federal courts. He also serves as a member of the editorial board of the Oxford University Press series *Language and the Law*. Leonard Declaration ¶ 1-11, Ex. A.

Serial Nos. 85598829 and 85598831

item that may at first glance appear to be an adjective flouting the rules
we all use to understand the English language. *Id.* at ¶ 20.

Thus, as Applicant maintains, while the word "wholesome" is a well-recognized
adjective in the English language and appears in dictionaries and common
parlance, the pluralized noun version of the word constitutes a unique source
indicator for Applicant's own particular brand of "pet food."

Applicant also criticizes the Examining Attorney's reliance on evidence relating
solely to the adjective "wholesome" as irrelevant to whether the invented noun is
merely descriptive of Applicant's "pet food." While Applicant concedes that the
Examining Attorney's evidence demonstrates that the word "wholesome" is used
commonly in the pet food industry to inform consumers that the pet food is healthy
and conducive to sound health for their pets, Applicant points out that the record is
devoid of any evidence related to the third-party use or dictionary entries of the
coined term "wholesomes."

In addition, Applicant analogizes to other marks composed of a term that is
derived from a descriptive word that, as a result of its novel spelling or use, has
been deemed not to be descriptive of the goods. In support thereof, Applicant has
made of record the following relevant third-party registrations on the Principal
Register:[4]

---

[4] Insofar as Registration No. 2762655 for the mark PET ESSENTIALS for "pet food and cat
litter" was cancelled on April 11, 2014, we have not considered it.

In addition, we did not consider Registration No. 3140553. Applicant mistakenly asserted in
its brief that the registered mark is SELECTS in plural form; however, the USPTO records
show that the mark is SELECT.

Serial Nos. 85598829 and 85598831

Registration No. 2243779 for the mark MEATIES for "pet foods and pet treats" in International Class 31;

Registration No. 3808209 for the mark SELECT ACTIVES ("SELECT" disclaimed) for "pet foods and pet treats" in International Class 31; and

Registration No. 4329243 for the mark DELECTABLE DELIGHTS for "dog food, cat food, dog treats and cat treats" in International Class 31.

Based on the record before us, we find that the Examining Attorney has satisfied the Office's burden of demonstrating that the term **WHOLESOMES** is merely descriptive when used in connection with "pet food." That is to say, we agree with the Examining Attorney that the coined term **WHOLESOMES** immediately conveys to prospective consumers a quality, feature or characteristic of Applicant's goods, namely, that Applicant's pet food is conducive to the sound health or well-being of the pet.[5] We acknowledge that the record is devoid of any dictionary definitions of the pluralized version of the adjective "wholesome," or for that matter, competitor use of that exact term in the pet food industry. That being said, even though Applicant may indeed be the first and only user of the newly created designation **WHOLESOMES** to identify "pet food," Applicant's proposed mark nonetheless "immediately conveys knowledge of a quality, feature, ...or characteristic" of Applicant's goods within the meaning of Trademark Act Section 2(e)(1). Nothing in the statutory language of that provision imposes the requirement

---

[5] Applicant vociferously argues throughout its brief that under *In re Gyulay*, 820 F.2d 1216, 3 USPQ2d 1009 (Fed. Cir. 1987), to be merely descriptive, a mark must describe a "significant" quality, feature, or characteristic of the goods or services. The Federal Circuit's most recent iteration of the test for descriptiveness set forth in *In re Chamber of Commerce, supra*, however, makes no mention of this requirement. In any event, nothing in the record persuades us that wholesomeness is not a significant feature of food products.

Serial Nos. 85598829 and 85598831

that to be merely descriptive, a proposed mark must consist of a commonly used or previously defined word. Rather, the proposed mark must "immediately convey knowledge," and such "knowledge" can be conveyed or communicated to prospective consumers in a number of ways, including by taking a commonly used adjective in the pet food industry and adding the letter "-S." In other words, the essence of the adjective "wholesome" has not been so transformed by the conversion to noun form so as to interfere with the consumer's perception of that term as describing a significant "quality, feature ...or characteristic" of Applicant's particular brand of pet food.

We hasten to add that the pertinent case law imposes no general rule that only marks composed of commonly used or previously defined words may be deemed merely descriptive. *In re Bayer Aktiengesellschaft, supra,* is particularly instructive on this point. In that case, the Federal Circuit affirmed the Board's ruling that the mark ASPIRINA was merely descriptive of applicant's analgesic goods on the grounds that ASPIRINA was simply a variation or misspelling of the generic term "aspirin." The court agreed with the Board's analysis that the close similarity in sound, appearance, and meaning of the mark ASPIRINA to the word "aspirin" immediately conveys the impression to the consuming public that Bayer's analgesics are aspirin-based products.[6] As the court explained:

> *In determining whether ASPIRINA is sufficiently similar to aspirin to render it merely descriptive of analgesic goods, the relevant features of the*

---

[6] The underlying Board decision did not consider the doctrine of foreign equivalents as argued by the Examining Attorney. Hence the Board declined to engage in a foreign equivalents analysis given its finding that the record demonstrates that ASPIRINA is a merely descriptive variation of aspirin.

Serial Nos. 85598829 and 85598831

>*mark are considered including appearance, sound, and meaning.* The
>Board found that ASPIRINA and aspirin are sufficiently close in
>appearance, sound, and meaning that *"[t]he mere addition of the letter 'A'
>at the end of the generic term 'aspirin' is simply insufficient to transform
>ASPIRINA into an inherently distinctive mark for analgesics." Final
>Decision*, slip. op. at 8, 11. Substantial evidence supports this finding. The
>appearance and meaning of ASPIRINA and aspirin are similar. Adding an
>"a" to aspirin results in virtually no distinction with respect to the visual
>impressions of the terms. Importantly, both terms will be used in
>association with the same analgesic goods in this country. There are,
>however, some differences in sound. ASPIRINA contains four syllables
>and aspirin contains two or three syllables (depending on how it is
>pronounced). ASPIRINA also contains different syllables and the
>emphasis is on the third syllable for ASPIRINA, whereas the emphasis is
>on the first syllable for aspirin. *When the mark ASPIRINA is considered
>as a whole, the significant similarities in appearance and meaning of
>ASPIRINA and aspirin demonstrate that the Board's finding that
>ASPIRINA is merely descriptive of analgesic goods is supported by
>substantial evidence.*

*Id.* at 1831-32 (emphasis added).

Applying the same principles here, when we consider the appearance, sound,
and meaning of applicant's proposed mark **WHOLESOMES**, it bears "significant
similarities" to the adjective "wholesome." The addition of the letter "s" and
transformation of the term from adjective to noun fails to render the term
**WHOLESOMES** into an inherently distinctive mark for "pet food." Consumers
encountering Applicant's mark would still perceive it as meaning that Applicant's
pet food is wholesome in nature by promoting the pet's sound health or well-being.
Indeed, in *In re Interco Inc.*, 29 USPQ2d 2037 (TTAB 1993), the Board affirmed the
examining attorney's refusal to register the mark FLORSHEIM LIGHTWEIGHTS
and design for shoes in the absence of a disclaimer of LIGHTWEIGHTS on an
evidentiary record quite similar to the one presented here. In *Interco*, the examining

Serial Nos. 85598829 and 85598831

attorney submitted a dictionary definition of the adjective "lightweight," copies of two third-party registrations in which the word LIGHTWEIGHT was disclaimed, and copies of excerpts from various recent newspaper stories showing uses of the word "lightweight" in relation to shoes. *Id.* at 2038. As the Board reasoned in its decision:

> We concur with the Examining Attorney that the above evidence, especially the dictionary definition and newspaper excerpts, is sufficient to establish that not only is the word "LIGHTWEIGHT," as applicant has admitted, merely descriptive when applied to shoes, but so is the term "LIGHTWEIGHTS". The latter, we believe, would clearly be regarded by customers and prospective purchasers of footwear as merely describing shoes which are lighter in weight than other kinds of shoes.
>
> As a final consideration, we observe that even if applicant has been the first and/or, unlike its competitors, is presently the only user of the term "LIGHTWEIGHTS" in connection with shoes, such fact cannot alter the merely descriptive significance of the term. [Internal citations omitted]. Such fact, in short, is simply not dispositive where, as here, the term "LIGHTWEIGHTS" unequivocally projects a merely descriptive connotation that applicant's shoes are of less than average weight. [Internal citation omitted].

*Id.* at 2039.

The reasoning set forth above applies with equal force here. While Applicant may indeed be the first, and only user of the coined term **WHOLESOMES** used in connection with "pet food," it nonetheless "projects a merely descriptive connotation" that Applicant's pet food is salutary for pets. *See id.*

As to the third-party registrations for pluralized marks for pet food and pet products referenced above, even if these prior registrations had some characteristics similar to applicant's application, the allowance of such prior registrations does not

Serial Nos. 85598829 and 85598831

bind the Board. *See In re Nett Designs Inc.*, 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001).

Finally, with respect to Applicant's expert's opinion that a consumer would have to engage in "a leap of 'metaphorical grammatical understanding'" in order to comprehend Applicant's mark, we are not persuaded that ordinary consumers would apply to the mark the kind of technical analysis that an expert linguist might perform. Rather, we believe a consumer's apprehension of the descriptive meaning of the mark would be immediate.

In sum, we find that the Office has met its burden of demonstrating that Applicant's proposed mark **WHOLESOMES**, when used in connection with "pet food," is merely descriptive.

**Decision as to Serial No. 85598829:** The refusal to register the mark **SPORTMIX WHOLESOMES** in the absence of a disclaimer of **WHOLESOMES** is affirmed. However, this decision will be set aside if, within two months of the mailing date of this decision, Applicant submits to the Board a proper disclaimer of **WHOLESOMES**. *See* Trademark Rule 2.142(g). The standardized disclaimer format is as follows:

> No claim is made to the exclusive right to use **WHOLESOMES** apart from the mark as shown.

**Decision as to Serial No. 855988331:** The descriptiveness refusal to register Applicant's mark **WHOLESOMES** is affirmed.

Form PTO 55 (12-80)

## U.S. DEPARTMENT OF COMMERCE
## United States Patent and Trademark Office

December 29, 2014

(Date)

**THIS IS TO CERTIFY** that the annexed is an accurate statement of the content entries in the file of the trademark application identified below. The list was taken from the TSDR and TTABvue electronic databases of this Office and comprises the record before the United States Patent and Trademark Office.

**The Trademark Application of:**

**Applicant: Midwestern Pet Foods, Inc.**

**Application Nos.: 85/598,829; 85/598,831**

**Date Filed: April 16, 2012**

**Marks: WHOLESOMES, SPORTMIX WHOLESOMES**

By authority of the
DIRECTOR OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE

*Certifying Officer*

## PROSECUTION HISTORY: SERIAL NOS. 85598829 AND 85598831

| DATE | DESCRIPTION |
|------|-------------|
| | **SERIAL NO. 85598829** |
| 04/16/2012 | DRAWING |
| 04/16/2012 | APPLICATION |
| 04/24/2012 | NOTICE OF PSEUDO MARK |
| 05/21/2012 | XSEARCH SEARCH SUMMARY |
| 05/21/2012 | PRIORITY ACTION |
| 11/21/2012 | RESPONSE TO OFFICE ACTION |
| 11/22/2012 | AMENDMENT AND MAIL PROCESSING COMPLETE |
| 11/26/2012 | NON-FINAL OFFICE ACTION |
| 12/12/2012 | SPECIMEN |
| 12/12/2012 | AMENDMENT TO ALLEGE USE |
| 12/13/2012 | NON-FINAL OFFICE ACTION |
| 12/14/2012 | AAU PROCESSING COMPLETE |
| 02/15/2013 | TEAS REQUEST FOR RECONSIDERATION AFTER FINAL ACTION |
| 02/15/2013 | SPECIMEN |
| 02/28/2013 | NOTICE OF ACCEPTANCE OF AMENDMENT TO ALLEGE USE |
| 02/28/2013 | NOTATION TO FILE |
| 02/28/2013 | AMENDMENT AND MAIL PROCESSING COMPLETE |
| 03/08/2013 | FINAL OFFICE ACTION |
| 09/09/2013 | TEAS REQUEST FOR RECONSIDERATION AFTER FINAL ACTION |
| 09/09/2013 | NOTICE OF APPEAL TO TTAB |
| 09/09/2013 | ORDER: APPEAL ACKNOWLEDGED; CASE REMANDED |
| 09/10/2013 | ORDER: REQUEST FOR RECONSIDERATION DENIED (TSDR entry) |
| 10/09/2013 | ORDER: PROCEEDINGS RESUMED |
| 12/09/2013 | APPLICANT'S APPEAL BRIEF |
| 12/09/2013 | APPLICANT'S REQUEST FOR AN ORAL HEARING |
| 12/23/2013 | ORDER: APPEAL FORWARDED TO EXAMINING ATTORNEY |
| 02/19/2014 | EXAMINING ATTORNEY'S APPEAL BRIEF |
| 03/11/2014 | APPLICANT'S REPLY BRIEF |
| 03/19/2014 | NOTICE OF FILING OF REPLY BRIEF |
| 07/28/2014 | ORDER: ORAL HEARING SCHEDULED |
| 08/05/2014 | ORAL HEARING APPEARANCE RECORD |

| | |
|---|---|
| 09/18/2014 | BOARD DECISION: AFFIRMED |
| 11/17/2014 | NOTICE OF APPEAL TO CAFC |
| **SERIAL NO. 85598831** | |
| 04/16/2012 | DRAWING |
| 04/16/2012 | APPLICATION |
| 05/21/2012 | XSEARCH SEARCH SUMMARY |
| 05/21/2012 | NON-FINAL OFFICE ACTION |
| 11/21/2012 | RESPONSE TO OFFICE ACTION |
| 11/22/2012 | AMENDMENT AND MAIL PROCESSING COMPLETE |
| 11/26/2012 | NON-FINAL OFFICE ACTION |
| 12/12/2012 | SPECIMEN |
| 12/12/2012 | AMENDMENT TO ALLEGE USE |
| 12/13/2012 | NON-FINAL OFFICE ACTION |
| 12/14/2012 | AAU PROCESSING COMPLETE |
| 02/15/2013 | TEAS REQUEST FOR RECONSIDERATION AFTER FINAL ACTION |
| 02/15/2013 | SPECIMEN |
| 02/28/2013 | NOTICE OF ACCEPTANCE OF AMENDMENT TO ALLEGE USE |
| 02/28/2013 | AMENDMENT AND MAIL PROCESSING COMPLETE |
| 03/08/2013 | FINAL OFFICE ACTION |
| 09/09/2013 | TEAS REQUEST FOR RECONSIDERATION AFTER FINAL ACTION |
| 09/09/2013 | NOTICE OF APPEAL TO TTAB |
| 09/09/2013 | ORDER: APPEAL ACKNOWLEDGED; CASE REMANDED |
| 09/10/2013 | ORDER: REQUEST FOR RECONSIDERATION DENIED (TSDR) |
| 10/09/2013 | ORDER: PROCEEDINGS RESUMED |
| 12/09/2013 | APPLICANT'S APPEAL BRIEF |
| 12/09/2013 | APPLICANT'S REQUEST FOR AN ORAL HEARING |
| 12/23/2013 | ORDER: APPEAL FORWARDED TO EXAMINING ATTORNEY |
| 02/19/2014 | EXAMINING ATTORNEY'S APPEAL BRIEF |
| 03/11/2014 | APPLICANT'S REPLY BRIEF |
| 03/19/2014 | NOTICE OF FILING OF REPLY BRIEF |
| 07/28/2014 | ORDER: ORAL HEARING SCHEDULED |
| 08/05/2014 | ORAL HEARING APPEARANCE RECORD |
| 09/18/2014 | BOARD DECISION: AFFIRMED |
| 11/17/2014 | NOTICE OF APPEAL TO CAFC |

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above

and foregoing NOTICE FORWARDING CERTIFIED LIST has been served on

Appellant this 29th day of December, 2014, by U.S. mail as follows:

> Timothy D. Pecsenye
> Blank Rome LLP
> 1 Logan Sq., 8th Floor
> Philadelphia, PA 19103-6998

> *Attorney for Appellant*

By:_____

**Shane M. Walter**
Paralegal Specialist