**No. 2015-1221**
_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

_____

**IN RE: MIDWESTERN PET FOODS, INC.**

_____

On Appeal from the United States Patent and Trademark Office,
Trademark Trial and Appeal Board in Serial Nos. 85/598,831; 85/598,829

_____

**BRIEF OF APPELLANT
MIDWESTERN PET FOODS, INC.**

_____

Timothy D. Pecsenye
Bradford C. Craig
BLANK ROME LLP
One Logan Square
130 N. 18th Street
Philadelphia, PA 19103-6998
(215) 569-5619 (t)
(215) 832-5619 (f)
E-Mail: Pecsenye@BlankRome.com

*Attorneys for Appellant
Midwestern Pet Foods, Inc.*

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

IN RE: MIDWESTERN PET FOODS, INC.

No. 2015-1221

## CERTIFICATE OF INTEREST

Counsel for Appellant Midwestern Pet Foods, Inc., certifies the following:

1.  The full name of every party represented by me is:

    **Midwestern Pet Foods, Inc.**

2.  The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

    **N/A**

3.  All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by me are:

    **None**

4.  The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or agency or are expected to appear in this court are:

    **Blank Rome LLP; Timothy D. Pecsenye and Bradford C. Craig**

Date:   March 6, 2015

Timothy D. Pecsenye
Bradford C. Craig
*Attorneys for Appellant*
*Midwestern Pet Foods, Inc.*

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES....................................................................... ii

STATEMENT OF RELATED CASES .................................................iv

STATEMENT OF JURISDICTION ......................................................1

STATEMENT OF THE ISSUE..............................................................1

STATEMENT OF THE CASE................................................................1

STATEMENT OF THE FACTS..............................................................2

SUMMARY OF THE ARGUMENT ......................................................4

ARGUMENT .........................................................................................5

   I.    Standard of Review ..................................................................5

   II.   The Board's Finding of Mere Descriptiveness Is Reversible Error ...........5

       A.    Legal Standard for Mere Descriptiveness ........................................6

       B.    "WHOLESOMES" Is Not Merely Descriptive ..............................9

       C.    Past Trademark Office Determinations Support Registration .......16

       D.    All Doubts Concerning Registration Should Be Resolved in Midwestern's Favor.......................................................................19

CONCLUSION .....................................................................................21

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

In re Abcor Dev. Corp., 588 F.2d 811 (C.C.P.A. 1978) .................................. 7-8, 21

In re Aid Labs., Inc., 221 U.S.P.Q. 1215 (T.T.A.B. 1983) ..................................... 19

In re Bayer Aktiengesellschaft, 488 F.3d 960 (Fed. Cir. 2007) ............................... 5

In re Chamber of Commerce of the United States, 675 F.3d 1297
    (Fed. Cir. 2012) ............................................................................................. 5

In re Chippendales USA Inc., 622 F.3d 1346 (Fed. Cir. 2010) .............................. 18

Consol. Edison Co. v. N.L.R.B., 305 U.S. 197 (1938) ............................................. 5

In re Entenmann's Inc., 15 U.S.P.Q.2d 1750 (T.T.A.B. 1990) ........................ 19-20

Gen. Mills, Inc. v. Kellogg Co., 824 F.2d 622 (8th Cir. 1987) ................................ 8

In re George Weston Ltd., 228 U.S.P.Q. 57 (T.T.A.B. 1985) ................................ 13

In re Gourmet Bakers, Inc., 173 U.S.P.Q. 565 (T.T.A.B. 1972) ........................... 20

In re Gyulay, 820 F.2d 1216 (Fed. Cir. 1987) ................................................. 6-7, 8

Holeproof Hosiery Co. v. Wallach Bros., 172 F. 859 (2d Cir. 1909) ..................... 12

HQ Network Sys. v. Exec. Headquarters, 755 F. Supp. 1110 (D. Mass. 1991) ........ 9

Indep. Nail & Packing Co. v. Stronghold Screw Prods., Inc., 205 F.2d 921
    (7th Cir. 1953) .......................................................................................... 12-13

In re Merrill Lynch, Pierce, Fenner, & Smith, Inc., 828 F.2d 1567
    (Fed. Cir 1987) ............................................................................................. 19

In re Mighty Leaf Tea, 601 F.3d 1342 (Fed. Cir. 2010) ........................................... 5

In re Pacer Tech., 338 F.3d 1348 (Fed. Cir. 2003) .................................................. 5

In re Pennwalt Corp., 173 U.S.P.Q. 317 (T.T.A.B. 1972) ..................................... 13

In re Qwik-Print Copy Shops, Inc., 616 F.2d 523 (C.C.P.A. 1980) ........................ 7

ii

*Self-Realization Fellowship Church v. Ananda Church of Self-Realization,*
59 F.3d 902 (9th Cir. 1995) ...............................................................7

*Sperry Rand Corp. v. Sunbeam Corp.*, 442 F.2d 979 (C.C.P.A. 1971)...................13

*In re The Gracious Lady Serv., Inc.*, 175 U.S.P.Q. 380 (T.T.A.B. 1972) ...............20

*Union Carbide Corp. v. Ever-Ready, Inc.*, 531 F.2d 366 (7th Cir. 1976) ............ 7-8

*Union Nat'l Bank of Tex., Laredo v. Union Nat'l Bank of Tex., Austin,*
909 F.2d 839 (5th Cir. 1990) ...............................................................9

*In re Viterra Inc.*, 671 F.3d 1358 (Fed. Cir. 2012).....................................5

*Watkins Prods., Inc. v. Sunway Fruit Prods., Inc.*, 311 F.2d 496
(7th Cir. 1962)............................................................................... 12-13

### STATUTES

28 U.S.C. § 1295(a)(4)(B) (2012)........................................................1

15 U.S.C. § 1052(e)(1) (2012)..........................................................1, 2

15 U.S.C. § 1056(a) (2012).............................................................. 2-3

### OTHER AUTHORITIES

Federal Circuit Rule of Practice 28(a)(5) ...............................................1

Fed. R. Evid. 201(c)......................................................................18

T.M.E.P. § 1209.01(a) (Jan. 2015) ...................................................8, 14

001500.00266/12488638v.1

## <u>STATEMENT OF RELATED CASES</u>

The following statements are supplied pursuant to Federal Circuit Rule 47.5:

1.     Appellant Midwestern Pet Foods, Inc. and its counsel are not aware of any other appeal from the same Trademark Trial and Appeal Board decision that was previously before this or any other appellate court; and

2.     Appellant Midwestern Pet Foods, Inc. and its counsel are not aware of any other cases that may directly affect or be directly affected by this Court's decision in this appeal.

iv

## STATEMENT OF JURISDICTION

Pursuant to Federal Circuit Rule 28(a)(5), Appellant Midwestern Pet Foods, Inc. submits the following statement of jurisdiction:

This Court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(B) (2012) because it is an appeal from a decision of the Trademark Trial and Appeal Board with respect to applications for registration of trademarks.

## STATEMENT OF THE ISSUE

Whether the Trademark Trial and Appeal Board committed reversible error in finding that the United States Patent and Trademark Office met its burden of proof in concluding that the term WHOLESOMES in Appellant Midwestern Pet Foods, Inc.'s trademarks WHOLESOMES and SPORTMIX WHOLESOMES is merely descriptive of pet food?

## STATEMENT OF THE CASE

Appellant Midwestern Pet Foods, Inc. ("Midwestern") seeks registration of the trademarks WHOLESOMES and SPORTMIX WHOLESOMES on the Principal Register for use in connection with pet food. This appeal arises from a final determination of the Trademark Trial and Appeal Board (the "Board") affirming the United States Patent and Trademark Office's (the "Trademark Office") refusal to register the mark WHOLESOMES pursuant to Section 2(e)(1) of the Lanham Act, 15 U.S.C. § 1052(e)(1) (2012), and the mark SPORTMIX

1

WHOLESOMES absent disclaimer of the term "WHOLESOMES," such requirement made pursuant to Section 6(a) of the Lanham Act, 15 U.S.C. § 1056(a) (2012). The Board issued its determination in an unpublished opinion dated September 18, 2014.

With this appeal, timely served and filed on November 18, 2014, Midwestern requests that the Court reverse the Board's affirmation of the Trademark Office's refusal to register the mark WHOLESOMES and refusal to register the mark SPORTMIX WHOLESOMES in the absence of a disclaimer of "WHOLESOMES."

## STATEMENT OF THE FACTS

On April 16, 2012, Midwestern filed applications with the Trademark Office to register the marks WHOLESOMES and SPORTMIX WHOLESOMES for "*pet food*." A17-A28. In an Office Action issued on May 21, 2012, the Trademark Office preliminarily refused registration of the mark WHOLESOMES pursuant to Section 2(e)(1) of the Lanham Act, 15 U.S.C. § 1052(e)(1), on the ground that the mark is allegedly merely descriptive of such goods. A29-A56. Also on May 21, 2012, the Trademark Office issued a Priority Action in which it required that Midwestern disclaim exclusive rights to the "WHOLESOMES" portion of the SPORTMIX WHOLESOMES mark pursuant to Section 6(a) of the Lanham Act,

2

15 U.S.C. § 1056(a), on the same ground of alleged mere descriptiveness of the term "WHOLESOMES." A57-A63.

On November 21, 2012, Midwestern timely responded to the Office Action and Priority Action with arguments and evidence against the descriptiveness refusal and disclaimer requirement, respectively. A64-A87. Despite Midwestern's arguments, however, the Trademark Office issued final Office Actions on March 8, 2013, maintaining its refusal to register the mark WHOLESOMES on asserted descriptiveness grounds and its requirement that Midwestern disclaim the term "WHOLESOMES" in the mark SPORTMIX WHOLESOMES.[1] A197-A280.

Midwestern timely filed Requests for Reconsideration on September 9, 2013, concurrently with notices of *ex parte* appeal. A281-A361. On September 10, 2013, the Trademark Office denied Midwestern's Requests for Reconsideration, and the appeals before the Board were resumed. A362-A435. After briefing was completed and argument was heard on August 5, 2014, the Board affirmed the Trademark Office's refusal to register the mark WHOLESOMES and refusal to

---

[1] The Trademark Office initially issued final Office Actions on November 26, 2012, A88-A196, but subsequently issued unrelated Office Actions on December 13, 2012, requiring Midwestern to submit substitute specimens of use. In the March 8, 2013 final Office Actions, the Trademark Office indicated Midwestern's satisfaction of the requirement for substitute specimens and reiterated its final refusal and disclaimer requirement based on alleged mere descriptiveness of "WHOLESOMES." A197-A280.

3

register the mark SPORTMIX WHOLESOMES absent a disclaimer of

"WHOLESOMES" in a determination issued on September 18, 2014. A1-A12.

Midwestern timely appealed the decision of the Board to the Court on

November 18, 2014. With this appeal, Midwestern seeks to have the Court reverse

the Board's affirmation of the Trademark Office's refusal to register the mark

WHOLESOMES and refusal to register the mark SPORTMIX WHOLESOMES in

the absence of a disclaimer of "WHOLESOMES," and remand to the Trademark

Office with instruction to publish the marks WHOLESOMES and SPORTMIX

WHOLESOMES for opposition.

## SUMMARY OF THE ARGUMENT

This appeal arises out of the improper refusal to register Midwestern's mark

WHOLESOMES and improper requirement that Midwestern enter a disclaimer of

exclusive rights to the "WHOLESOMES" portion of its mark SPORTMIX

WHOLESOMES based on the Trademark Office's erroneous position that the term

WHOLESOMES is merely descriptive when used in connection with pet food.

Such refusal and disclaimer requirement are improper because the hitherto

nonexistent term "WHOLESOMES" is incapable of immediately conveying

knowledge about the applied-for goods and therefore cannot be deemed merely

descriptive. Consequently, because the legal standard for mere descriptiveness is

not satisfied, the descriptiveness refusal and disclaimer requirement are untenable.

Midwestern's marks WHOLESOMES and SPORTMIX WHOLESOMES must

therefore be held registrable on the Principal Register without disclaimer.

## ARGUMENT

## I.    Standard of Review

On appeal, the Court "review[s] the Board's legal conclusions *de novo* and

its factual findings for substantial evidence." In re Viterra Inc., 671 F.3d 1358,

1361 (Fed. Cir. 2012) (citing In re Mighty Leaf Tea, 601 F.3d 1342, 1346

(Fed. Cir. 2010)). Whether "a mark [or portion thereof] is merely descriptive is a

factual finding which we review for substantial evidence." In re Chamber of

Commerce of the United States, 675 F.3d 1297, 1300 (Fed. Cir. 2012) (citing In re

Bayer Aktiengesellschaft, 488 F.3d 960, 964 (Fed. Cir. 2007)). Substantial

evidence means "'more than a mere scintilla' and 'such relevant evidence as a

reasonable mind would accept as adequate' to support a conclusion." In re Pacer

Tech., 338 F.3d 1348, 1349 (Fed. Cir. 2003) (quoting Consol. Edison Co. v.

N.L.R.B., 305 U.S. 197, 229 (1938)).

## II.    The Board's Finding of Mere Descriptiveness Is Reversible Error.

Midwestern respectfully submits that, as demonstrated herein, the Board

erred in affirming the Trademark Office's determination that the term

WHOLESOMES in Midwestern's marks WHOLESOMES and SPORTMIX

WHOLESOMES is merely descriptive of pet food. As the term "WHOLESOMES"

is a novel, unique, and hitherto nonexistent word coined by Midwestern, it is

5

incapable of immediately conveying knowledge about pet food and therefore fails to satisfy the threshold legal standard for mere descriptiveness as set forth below. Furthermore, past determinations of the Trademark Office in which analogous registrations were deemed non-descriptive support Midwestern's position against descriptiveness of "WHOLESOMES." Finally, the Trademark Office and the Board erred in failing to resolve doubts concerning registration in Midwestern's favor. Where the term "WHOLESOMES," at worst, straddles the cusp between being suggestive and merely descriptive, a proper balancing of the doubts at hand favors publication of Midwestern's marks for opposition. Based on the foregoing and the following analysis, Midwestern submits that the descriptiveness refusal and disclaimer requirement are untenable, and Midwestern's marks are therefore registrable on the Principal Register without a claim of acquired distinctiveness or disclaimer. Accordingly, Midwestern respectfully requests that the Court reverse the Board's affirmation of the Trademark Office's descriptiveness refusal and disclaimer requirement and remand for publication of the marks WHOLESOMES and SPORTMIX WHOLESOMES.

### A.   <u>Legal Standard for Mere Descriptiveness</u>

Descriptiveness refusals and related descriptiveness-based disclaimer requirements are appropriate only when "the mark [or the relevant portion thereof] merely describes a *significant* characteristic of the goods." <u>In re Gyulay</u>, 820 F.2d

1216, 1217 (Fed. Cir. 1987) (emphasis added). Furthermore, "[w]hether a given mark [or portion thereof] is suggestive or merely descriptive depends on whether the mark '*immediately conveys . . . knowledge* of the ingredients, qualities, or characteristics of the goods . . . with which it is used,' or whether 'imagination, thought, or perception is required to reach a conclusion on the nature of the goods.'" Id. (quoting In re Qwik-Print Copy Shops, Inc., 616 F.2d 523, 525 (C.C.P.A. 1980)) (emphasis added; omissions in original).

It is clear, therefore, that a mark or portion thereof must *immediately* convey knowledge to support a descriptiveness refusal or a requirement to disclaim the relevant portion. The commercial impression cannot be a time-consuming, tenuous, or pensive connection; rather, it must immediately convey knowledge of the recited goods, or some quality or characteristic thereof. If a certain image of the applicant's goods does not immediately come to mind upon hearing or seeing the mark, then *some imagination* must be required to connect the mark to the goods. See Self-Realization Fellowship Church v. Ananda Church of Self-Realization, 59 F.3d 902, 911 (9th Cir. 1995) ("If the mental leap between the word and product's attributes is not almost instantaneous, this strongly indicates suggestiveness, not direct descriptiveness.") (citation omitted); In re Abcor Dev. Corp., 588 F.2d 811, 814 (C.C.P.A. 1978) (quoting Union Carbide Corp. v. Ever-Ready, Inc., 531 F.2d 366, 379 (7th Cir. 1976)) ("Generally speaking, if the mark

7

[or portion thereof] imparts information directly, it is descriptive. If it stands for an idea which requires some operation of the imagination to connect it with the goods, it is suggestive."). Thus, where a mark or portion thereof neither immediately conveys knowledge about a characteristic of the identified goods, nor is that characteristic significant from the relevant consumer's point of view, the mark fails to satisfy the legal standard for descriptiveness and accordingly must be held registrable (without a claim of acquired distinctiveness or disclaimer).

In contrast to descriptive terms, a mark or portion thereof is suggestive if it requires a consumer to employ at least some degree of thought, imagination, and perception to determine the nature of the goods or services connected to it. See In re Gyulay, 820 F.2d at 1217. In other words, if "imagination, thought or perception is required to reach a conclusion on the nature of the goods," then it is a suggestive mark entitled to protection. Id. (citation and internal quotation marks omitted); see also Gen. Mills, Inc. v. Kellogg Co., 824 F.2d 622, 625 (8th Cir. 1987) (noting that suggestive marks, which "requir[e] imagination to reach a conclusion as to the product's nature, . . . are entitled to broad trademark protection without establishing secondary meaning" (citation omitted)).

Elucidating on this standard, the Trademark Manual of Examining Procedure provides that "a designation does not have to be devoid of all meaning in relation to the goods/services to be registrable." T.M.E.P. § 1209.01(a)

8

(Jan. 2015); <u>see, e.g.</u>, <u>HQ Network Sys. v. Exec. Headquarters</u>, 755 F. Supp. 1110, 1123 (D. Mass. 1991) ("[T]he mark 'Headquarters Companies' is on the cusp between being descriptive and being suggestive. It is, if you will, a suggestive mark with descriptive elements."). Understanding that a suggestive mark may, too, carry a certain meaning or significance and yet still be registrable (without an acquired distinctiveness limitation or disclaimer) is crucial to the case at hand.[2]

Emanating from the aforementioned wealth of case law, it is clear that the standard for descriptiveness requires a basis of significance and immediacy. Descriptiveness, moreover, is a hurdle that can be eliminated through the creation of a new and suggestive whole. While not without its ambiguity, the descriptiveness standard must be properly applied with all due favor to the applicant, as further explained <u>infra</u> Part D.

### B.    "WHOLESOMES" Is Not Merely Descriptive.

Midwestern respectfully submits that the Board erred in determining that the Trademark Office satisfied its burden of demonstrating that "WHOLESOMES" is merely descriptive of pet food. On the contrary, the record is significantly devoid of the requisite "substantial evidence" necessary to support such a finding. Indeed,

---

[2] An alternate phrasing of the "imagination" test inquires as to whether others in the same business would generally need the word to describe their products or services adequately. However, "[t]he *need* to use a term because it is generic or highly descriptive should be distinguished from the *desire* to use it because it is attractive." <u>Union Nat'l Bank of Tex., Laredo v. Union Nat'l Bank of Tex., Austin</u>, 909 F.2d 839, 848 n.22 (5th Cir. 1990) (emphasis in original).

9

under the appropriate standard set forth above, the term "WHOLESOMES" simply cannot be deemed merely descriptive of pet food, as it by no means *immediately* describes or conveys knowledge or a characteristic of such goods to relevant consumers.

Upon encountering Midwestern's pet food offered under its WHOLESOMES or SPORTMIX WHOLESOMES marks, consumers must use some degree of imagination, thought, or perception before an association can be made between the term "WHOLESOMES" and the nature of such goods. As explained by Dr. Robert A. Leonard, an expert in the field of linguistics, "unlike the word 'wholesome,' the word 'WHOLESOMES' is a novel, quasi-invented lexical item with no accepted meaning." A299.[3] Whereas the word "wholesome" is an adjective and appears in dictionaries as such, Midwestern's unique, coined noun "WHOLESOMES" cannot be found in any dictionaries. This point is illuminating, as it demonstrates that "WHOLESOMES" is a novel word with *no accepted meaning*. An undefined word such as "WHOLESOMES" cannot possibly be construed as merely descriptive as it is not capable of *immediately* conveying knowledge about the goods in connection with which such word is used. As there is no dictionary definition or accepted meaning of the word "WHOLESOMES," it

---

[3] Midwestern relies upon the total context of Dr. Leonard's report as support for the registrability of WHOLESOMES and of SPORTMIX WHOLESOMES without disclaimer. A296-A315.

is not possible for consumers immediately to recognize the word

"WHOLESOMES" as a descriptor of Midwestern's goods. A300

("'WHOLESOMES' . . . cannot be used as[] an adjective.").

At worst, the term "WHOLESOMES" may be *suggestive* of a characteristic

of Midwestern's goods, but it by no means *immediately* conveys knowledge about

Midwestern's pet food. Indeed, as Professor Leonard emphasizes, "[t]hat

"WHOLESOMES" is a plural noun, and not an adjective [i.e., "wholesome"],

shifts the sands of cognition for anyone encountering the word." A300-A301.

Thus, the mental effort that must be employed by consumers to associate the

hitherto nonexistent term "WHOLESOMES" with Midwestern's goods exceeds

the minimal degree of imagination, thought, and perception that would be required

to recognize the descriptive nature of the preexisting adjective "wholesome" as

used in respect of such goods. While "wholesome" may have no more than merely

descriptive significance in relation to pet food, Midwestern's newly-created noun

"WHOLESOMES" necessarily requires some degree of imagination to surmise the

nature of such goods. Whereas merely descriptive marks (or portions thereof)

*immediately* describe the goods offered thereunder, suggestive terms – such as

"WHOLESOMES" – require consumers to employ some degree of imagination,

thought, or perception before arriving at a conclusion as to the nature of the goods.

This is the hallmark of suggestive marks.

11

Furthermore, contrary to the Trademark Office's unsupported assertion that "adding the letter S to the term [or mark] does not change the overall commercial impression of the term [or mark]," A199, A241, "[t]he *s* serves to transform an adjective [i.e., "wholesome"] into a newly minted plural noun; it is not merely pluralizing the adjective 'wholesome.'" A301. Thus, "the final 's' is a valid and meaningful distinguishing characteristic" that differentiates the descriptive adjective "wholesome" from Midwestern's unique and novel word WHOLESOMES in the minds of consumers. A301.

Midwestern's position against descriptiveness of "WHOLESOMES" is entirely consistent not only with the practice of the Trademark Office as explained infra Part C, but also with pertinent case law. In Watkins Prods., Inc. v. Sunway Fruit Prods., Inc., for example, the Seventh Circuit reversed the District Court's holding that the mark FRESHIE – a derivative of the descriptive adjective "fresh" – was merely descriptive of a beverage base for flavored soft drinks, noting that the lower court "overlooked the distinction between suggestive and descriptive trademarks." 311 F.2d 496, 499 (7th Cir. 1962). In so finding, the court reiterated the well-settled principle that "a trademark may consist of a word or words suggestive of the character of the goods or the properties which the owner of the mark wishes the public to attribute to them, such as 'Holeproof' [Holeproof Hosiery Co. v. Wallach Bros., 172 F. 859 (2d Cir. 1909)], and be valid." Id.

12

(quoting Indep. Nail & Packing Co. v. Stronghold Screw Prods., Inc., 205 F.2d 921, 925 (7th Cir. 1953)) (internal quotation marks omitted). Similarly, in Sperry Rand Corp. v. Sunbeam Corp., the Court of Customs and Patent Appeals deemed the mark LEKTRONIC – derived from the descriptive word "electronic" – not merely descriptive of electric shavers, noting that "[w]hile the word 'electronic' may be descriptive of the goods here and the word LEKTRONIC may be phonetically close to 'electronic,' it does not necessarily follow that the mark LEKTRONIC is 'merely descriptive' of appellant's goods." 442 F.2d 979, 980 (C.C.P.A. 1971); see also In re Pennwalt Corp., 173 U.S.P.Q. 317, 318 (T.T.A.B. 1972) (finding DRI-FOOT not merely descriptive of antiperspirant deodorant for feet, reasoning in part that "'DRI-FOOT' or 'dry-foot,' in the singular, is obviously not the usual or normal manner in which the purpose of an anti-perspirant and deodorant for the feet would be described"); In re George Weston Ltd., 228 U.S.P.Q. 57, 58 (T.T.A.B. 1985) (holding that SPEEDI BAKE for use in connection with frozen dough "falls within the category of suggestive rather than descriptive marks" and is therefore not merely descriptive). Like the marks analyzed in these cases, "WHOLESOMES" is a novel, coined term derived from, and phonetically similar to, a preexisting word; however, each of these words has been altered, resulting in nuanced commercial impressions than those of the words from which they are derived. Like the other derived terms, even though

13

WHOLESOMES may convey some meaning in relation to the goods, the unusual spelling and presentation of the word precludes consumers from *immediately* perceiving any descriptive significance. Accordingly, WHOLESOMES must be deemed suggestive and removed from the realm of mere descriptiveness. Indeed, as noted above, "a designation does not have to be devoid of all meaning in relation to the goods/services to be registrable." T.M.E.P. § 1209.01(a).

The Trademark Office's reliance on evidence relating solely to the adjective "wholesome" to support its position that "WHOLESOME<u>S</u>" is merely descriptive is misplaced. Midwestern is not attempting to register "wholesome"; rather, Midwestern seeks registration of the marks WHOLESOMES and SPORTMIX WHOLESOMES (without disclaimer) and the protections that flow from such registrations, including the exclusive right to use *that specific term* – WHOLESOMES – in commerce in connection with pet food. Thus, the question in the subject matter is whether "*wholesome<u>s</u>*" – not "*wholesome*" – is merely descriptive of pet food. While the Trademark Office's evidence may demonstrate that the word "*wholesome*" "is used commonly in the pet food industry to inform consumers that the pet food is healthy and conducive to sound health for their pets," A199, A241, the record is significantly devoid of *any* evidence related to the use and definition or well-understood meaning of "WHOLESOMES." Indeed, the Trademark Office presents *no evidence* to support the conclusion that

"WHOLESOMES" is descriptive of pet food, *nor could it*, as the word "is a newly created noun with no accepted meaning." A301. While consumers may recognize and understand the word "wholesome" (and its dictionary meaning) and ultimately formulate a suggestive association between "WHOLESOMES" and Midwestern's pet food, they must first engage in at least a minimal amount of reasoning to associate the unique and novel word "WHOLESOMES" with the preexisting adjective "wholesome," rendering it impossible *immediately* to associate "WHOLESOMES" with Midwestern's goods. Indeed, absent prior exposure to the hitherto nonexistent term "WHOLESOMES," any link between such term and Midwestern's goods requires more than a consumer's *immediate* impression. A301 ("[L]inking the adjective 'wholesome' to 'WHOLESOMES' would require a leap of 'metaphorical grammatical understanding' . . . to process a new lexical item."). Without evidence to support the descriptiveness refusal and disclaimer requirement, the Trademark Office's burden has not been satisfied.

As the foregoing demonstrates, the novel term "WHOLESOMES" precludes any possibility of *immediate* conveyance to consumers of the nature of Midwestern's pet food. Consequently, WHOLESOMES fails to satisfy the threshold legal standard for mere descriptiveness, rendering the Trademark Office's descriptiveness refusal and disclaimer requirement untenable. Indeed, a finding of descriptiveness based on a term that did not exist until its recent coinage

15

by Midwestern simply cannot stand. Midwestern's marks WHOLESOMES and SPORTMIX WHOLESOMES thus can only be understood as unique source identifiers and are therefore unequivocally registrable on the Principal Register (without a claim of acquired distinctiveness or disclaimer). Accordingly, Midwestern respectfully requests that the Court reverse the Board's affirmation of the Trademark Office's descriptiveness refusal and disclaimer requirement and remand for publication of the marks WHOLESOMES and SPORTMIX WHOLESOMES.

### C.    Past Trademark Office Determinations Support Registration.

Several notable analogous Registrations on the Principal Register further support Midwestern's position against descriptiveness of "WHOLESOMES," including but not limited to the following:

-- MEATIES – Reg. No. 2,243,779 for "pet foods and pet treats" [Int. Cl. 31], A316 --

-- PET ESSENTIALS ["PET" disclaimed] – Reg. No. 2,762,655 for "pet food and cat litter" [Int. Cl. 31],[4] A317 --

-- SELECTS – Reg. No. 3,140,553 for "animal foodstuffs" [Int. Cl. 31],[5] A318 --

---

[4] In its determination issued September 18, 2014, the Board indicated that it had declined to consider Registration No. 2,762,655 on the basis that the registration was cancelled on April 11, 2014. A7. Midwestern submits that the Board's refusal to consider such registration on this basis was in error, as the cancellation of such registration does not change the fact that, at the time of the mark's registration, the Trademark Office deemed the "ESSENTIALS" portion of the mark not descriptive of "pet food and cat litter."

16

-- SELECT ACTIVES ["SELECT" disclaimed] – Reg. No. 3,808,209 for "pet foods and pet treats" [Int. Cl. 31], A319 --

-- DELECTABLE DELIGHTS – Reg. No. 4,329,243 for "dog food, cat food, dog treats and cat treats" [Int. Cl. 31], A320 --

-- GREENIES – Reg. No. 2,388,708 for "pet food" [Int. Cl. 31] --

-- MINTIES – Reg. No. 2,733,488 for "edible dog bone chew treat" [Int. Cl. 31] --

-- SMALLZ – Reg. No. 4,689,973 for "pet food; pet treats" [Int. Cl. 31] --

-- SKINNY BAKES – Reg. No. 4,571,594 for "edible pet treats" [Int. Cl. 31] --

-- PET TASTIES ["PET" disclaimed] – Reg. No. 2,748,212 for "pet food" [Int. Cl. 31] --

-- CARROT CRUNCHIES & Design ["CARROT" disclaimed] – Reg. No. 4,111,565 for "fresh vegetables" [Int. Cl. 31] --

-- VITA EXOTICS – Reg. No. 4,053,858 for "pet food; food for animals; animal foodstuffs; animal snacks; pet treats; animal treats; pet snacks" [Int. Cl. 31] --

-- SOFTIES MEDLEY – Reg. No. 4,013,584 for "pet treats" [Int. Cl. 31] --

-- NUTLY – Reg. No. 3,271,522 for "flavored ingredients sold as an integral component of animal foodstuffs, namely, pet food, beverages for animals, pet biscuits and edible pet treats" [Int. Cl. 31] --

---

[5] Also in its determination issued September 18, 2014, the Board declined to consider Registration No. 3,140,553, asserting that "[Midwestern] mistakenly asserted in its brief that the registered mark is SELECTS in plural form; however, the USPTO records show that the mark is SELECT." A7. According to the Trademark Office's records, however, the owner of this registration submitted a request to amend its mark from "SELECTS" to "SELECT" on April 2, 2014. Furthermore, the fact that the registration was originally for the mark "SELECTS" shows that the Trademark Office deemed such term not descriptive of "animal foodstuffs." Accordingly, Midwestern submits that the Board's refusal to consider such registration on this basis was in error.

17

-- STEAKERS – Reg. No. 2,880,286 for "edible pet treats and pet food" [Int. Cl. 31] --

-- SMELL GOODIES – Reg. No. 3,104,892 for, *inter alia*, "pet snacks, pet treats, and animal food additives to control animal odor" [Int. Cl. 31] --

-- TEENIE – Reg. No. 3,536,604 for "pet food and edible pet treats" [Int. Cl. 31][6] --

Each of these marks is comprised of or contains a term that is derived from a descriptive word that, as a result of its novel spelling or use, has been deemed by the Trademark Office not to be descriptive of the goods for which it is registered. For example, while the adjectives "meaty" and "active" may be merely descriptive of a feature or characteristic of pet food and pet treats, it cannot reasonably be maintained that the invented nouns "MEATIES" and "ACTIVES" are likewise merely descriptive. Given that the Trademark Office has allowed the foregoing analogous marks to register on the Principal Register without a disclaimer or an acquired distinctiveness limitation, Midwestern's marks WHOLESOMES and SPORTMIX WHOLESOMES are as deserving, if not more so, of publication. Thus, to ensure consistent treatment between such registrations and Midwestern's marks, Midwestern respectfully requests that the Court reverse the Board's

---

[6] Midwestern respectfully requests that the Court take judicial notice of the existence of the third-party registrations identified herein that are not presently part of the record pursuant to Fed. R. of Evid. 201. See, e.g., In re Chippendales USA Inc., 622 F.3d 1346, 1356 (Fed. Cir. 2010) ("[T]his court may take judicial notice of the existence of . . . trademarks under Fed. R. Evid. 201(c), as we determine that the registration documents by the PTO are 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'") (citations omitted).

18

affirmation of the Trademark Office's refusals and remand for publication of the

marks WHOLESOMES and SPORTMIX WHOLESOMES for opposition.

### D.     All Doubts Concerning Registration Should Be Resolved in Midwestern's Favor.

Finally, Midwestern respectfully submits that the Board erred in failing to

resolve all doubts as to registrability in Midwestern's favor. Even where the border

between a finding of a mark (or portion thereof) descriptive or suggestive is

ambiguous, the clear weight of authority is to resolve any doubt in the applicant's

favor and to publish the mark for opposition. <u>See, e.g.</u>, <u>In re Merrill Lynch, Pierce,</u>

<u>Fenner, & Smith Inc.</u>, 828 F.2d 1567, 1571 (Fed. Cir. 1987) ("It is incumbent on

the Board to balance the evidence of public understanding of the mark against the

degree of descriptiveness encumbering the mark, and to resolve reasonable doubt

in favor of the applicant, in accordance with practice and precedent."); <u>In re Aid</u>

<u>Labs., Inc.</u>, 221 U.S.P.Q. 1215, 1216 (T.T.A.B. 1983) ("Where there is doubt on

the matter, the doubt should be resolved in applicant's behalf and the mark should

be published in accordance with Section 12(c) of the [Lanham] Statute for

purposes of opposition."); <u>In re Entenmann's Inc.</u>, 15 U.S.P.Q.2d 1750, 1751 n.2

(T.T.A.B. 1990) ("[I]n ex parte cases involving a refusal to register on the basis of

mere descriptiveness, it is the practice of this Board to resolve doubts in the favor

of the applicant and pass the mark to publication."). After all, "any person who

believes that he would be damaged by the registration will have an opportunity . . .

19

to oppose the registration of the mark and to present evidence. . . ." In re Gourmet Bakers, Inc., 173 U.S.P.Q. 565, 565 (T.T.A.B. 1972); see also In re The Gracious Lady Serv., Inc., 175 U.S.P.Q. 380, 382 (T.T.A.B. 1972) ("It is recognized that there is a large gray area in determining the descriptiveness of a mark, and where reasonable men may differ, it has been the practice to resolve such doubt in an applicant's behalf and publish the mark for opposition purposes. . . .").

As the foregoing demonstrates, the burden on the Trademark Office is not simply to show that WHOLESOMES is "merely descriptive" of pet food but also to remove any doubts and resolve any ambiguities with respect to such term in Midwestern's favor. Midwestern respectfully submits that neither burden has been satisfied. Indeed, the Trademark Office's position in the instant case is supported neither by substantial evidence in the record nor by application of the law to the facts. At the very least, the utter lack of any evidence of use or generally accepted meaning of the term "WHOLESOMES" certainly engenders doubt as to the descriptiveness of such word. When viewed in context, with the law properly applied to the facts, the purported descriptiveness of "WHOLESOMES" vanishes in favor of Midwestern's marks' overarching roles as recognizable, unique source identifiers for Midwestern. See Abcor, 588 F.2d at 813 & n.7 ("Although a mark may be generally descriptive, if it also functions as an indication of origin, it is not 'merely descriptive.' . . . This court has indicated that 'merely' means 'only.'").

20

Ultimately, any ambiguity should be resolved in Midwestern's favor, and, in view of the foregoing, Midwestern's marks should be approved for publication (without disclaimer). Accordingly, Midwestern requests that the Court reverse the Board's affirmation of the Trademark Office's refusals and remand for publication of Midwestern's marks for opposition.

## <u>CONCLUSION</u>

For all of the reasons set forth above, Appellant Midwestern Pet Foods, Inc., respectfully requests that the Court reverse the Board's affirmation of the Trademark Office's refusal to register the mark WHOLESOMES and refusal to register the mark SPORTMIX WHOLESOMES in the absence of a disclaimer of "WHOLESOMES," and remand to the Trademark Office with instruction to publish the marks WHOLESOMES and SPORTMIX WHOLESOMES for opposition.

* * * * *

001500.00266/12488638v.1

Respectfully submitted,

MIDWESTERN PET FOODS, INC.

Date: __March 6, 2015__          By: _____

Timothy D. Pecsenye
Bradford C. Craig

*Attorneys for Appellant*
*Midwestern Pet Foods, Inc.*

BLANK ROME LLP
One Logan Square
130 N. 18th Street
Philadelphia, PA 19103-6998
(215) 569-5619 (t)
(215) 832-5619 (f)
E-Mail: Pecsenye@BlankRome.com

<u>ADDENDUM</u>

**Opinion of the United States Patent and Trademark Office
Trademark Trial and Appeal Board dated September 18, 2014**

001500.00266/12488638v.1

THIS OPINION IS NOT A
PRECEDENT OF THE TTAB

**Oral Hearing**: August 5, 2014          **Mailed**: September 18, 2014

## UNITED STATES PATENT AND TRADEMARK OFFICE
————

### Trademark Trial and Appeal Board
————

*In re Midwestern Pet Foods, Inc.*
————

Serial Nos. 85598829 and 85598831
————

Timothy D. Pecsenye and Bradford C. Craig of Blank Rome LLP for Midwestern Pet Foods, Inc.

Seth A. Rappaport, Trademark Examining Attorney, Law Office 103 (Michael Hamilton, Managing Attorney).

————

Before Taylor, Lykos, and Masiello,
Administrative Trademark Judges.

Opinion by Lykos, Administrative Trademark Judge:

On April 16, 2012, Midwestern Pet Foods, Inc. ("Applicant") filed applications to register on the Principal Register the marks **WHOLESOMES** and **SPORTMIX WHOLESOMES**, both in standard character form, for "pet food" in International Class 31.[1]

The Trademark Examining Attorney has refused registration of the mark **WHOLESOMES** under Section 2(e)(1) of the Trademark Act, 15 U.S.C.

---

[1] Serial Nos. 85598829 and 85598831, alleging a bona fide intent to use the mark in commerce pursuant to Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b). During *ex parte* prosecution of both applications, Applicant amended the basis for its applications to

Serial Nos. 85598829 and 85598831

§ 1052(e)(1), on the ground that the mark is merely descriptive of Applicant's identified goods. In addition, registration of the mark **SPORTMIX WHOLESOMES** has been finally refused in light of Applicant's failure to comply with the Examining Attorney's requirement for a disclaimer of "**WHOLESOMES**" pursuant to Trademark Act § 6(a), 15 U.S.C. § 1056(a), on the ground that the term is merely descriptive of the identified goods.

Upon final refusal of registration, Applicant filed a timely appeal and request for reconsideration for each application. After the Examining Attorney denied the requests for reconsideration, the appeals were resumed. Inasmuch as these appeals involve common questions of law and fact, and each has been treated in substantially the same manner by the Applicant and by the Examining Attorney, we have consolidated these separate appeals and are issuing a single decision herein. For the reasons explained below, we affirm both refusals to register.

Section 2(e)(1) of the Lanham Act precludes registration of a mark that, when applied to the goods or services of the applicant, is merely descriptive of them. 15 U.S.C. § 1052(e)(1) (2006). "A term is merely descriptive if it immediately conveys knowledge of a quality, feature, function, or characteristic of the goods or services with which it is used." *In re Chamber of Commerce of the U.S.,* 675 F.3d 1297, 102 USPQ2d 1217, 1219 (Fed. Cir. 2012) (quoting *In re Bayer Aktiengesellschaft,* 488 F.3d 960, 82 USPQ2d 1828, 1831 (Fed. Cir. 2007)). The determination of whether a mark is merely descriptive must be made in relation to the goods or services for

---

Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a), and filed acceptable amendments to allege use and specimens.

Serial Nos. 85598829 and 85598831

which registration is sought, not in the abstract. *In re Chamber of Commerce*, 102 USPQ2d at 1219; *In re Bayer*, 82 USPQ2d at 1831. This requires consideration of the context in which the mark is used or intended to be used in connection with those goods/services, and the possible significance that the mark would have to the average purchaser of the goods or services in the marketplace. *In re Chamber of Commerce*, 102 USPQ2d at 1219; *In re Bayer*, 82 USPQ2d at 1831; *In re Omaha Nat'l Corp.*, 819 F.2d 1117, 2 USPQ2d 1859 (Fed. Cir. 1987). Evidence that a term is merely descriptive to the relevant purchasing public "may be obtained from any competent source, such as dictionaries, newspapers, or surveys." *In re Bayer*, 82 USPQ2d at 1831 (quoting *In re Bed & Breakfast Registry,* 791 F.2d 157, 229 USPQ 818, 819 (Fed. Cir. 1986)).

An examining attorney may require an applicant to disclaim an unregistrable component of a mark otherwise registrable. Trademark Act Section 6(a), 15 U.S.C. § 1056(a). A "disclaimer" is a statement that applicant does not claim exclusive rights to an unregistrable component of a mark:

> …a disclaimer of a component of a composite mark amounts merely to a statement that, in so far as that particular registration is concerned, no rights are being asserted in the disclaimed component standing alone, but rights are asserted in the composite; and the particular registration represents only such rights as flow from the use of the composite mark.

*Sprague Electric Co. v. Erie Resistor Corp.,* 101 USPQ 486, 486-87 (Comm'r Pats. 1954). As noted above, merely descriptive terms are unregistrable under Trademark Act Section 2(e)(1) and, therefore, are subject to disclaimer if the mark is otherwise registrable. Failure to comply with a disclaimer requirement is grounds for refusal

Serial Nos. 85598829 and 85598831

of registration. *See In re Omaha National Corp.*, 819 F.2d 1117, 2 USPQ2d 1859 (Fed. Cir. 1987); *In re Richardson Ink Co.*, 511 F.2d 559, 185 USPQ 46 (CCPA 1975); *In re National Presto Industries, Inc.*, 197 USPQ 188 (TTAB 1977); and *In re Pendleton Tool Industries, Inc.*, 157 USPQ 114 (TTAB 1968).

The issue presented in this case is whether the Examining Attorney has sustained the Office's burden of establishing that the term **WHOLESOMES**, as applied to "pet food," is merely descriptive.

The Examining Attorney argues that the term **WHOLESOMES**, when used in connection with "pet food," immediately conveys to prospective consumers a feature or characteristic of Applicant's goods, namely that the product promotes the pet's "sound health or well-being." In support of the refusals to register, the Examining Attorney's evidence includes the following:

● An entry for the word "wholesome" obtained from the *American Heritage Dictionary of the English Language* (4th ed. 2000), defining the word, in pertinent part, as

> **Adj. 1.** "Conducive to sound health or well-being; salutary; *simple, wholesome food; a wholesome climate*."…**3.** Sound; healthy.[2]

● Applicant's specimen of record consisting of product packaging, stating in relevant part that Applicant's pet food contains "NO corn, No wheat, and No soy;" "Balanced Omega 6 and 3 fatty acids" and "Naturally Preserved."

---

[2] Search results for the word "wholesome" obtained from *The Free Dictionary by Farlex* (www.thefreedictionary.com). Office Action dated May 21, 2012.

Serial Nos. 85598829 and 85598831

● Third-party used-based registrations for marks comprised in part of the term **WHOLESOME** and with a disclaimer of that term, for the same goods as Applicant's ("pet food"), the most relevant being WHOLESOME GOODNESS (standard character mark) for "pet food." (U.S. Registration No. 3565421) and WHOLESOME MEDLEY (standard character mark) for "pet food." (U.S. Registration No. 3521984).

● Internet evidence that the adjective "wholesome" is used by competitors to describe and promote their own brand of pet food or pet treats. See for example the following:

> The Wholesome Pet Market: Birmingham's Only Independent Healthy Pet Food Retailer….I carry only the best of raw, dehydrated, freeze-dried, canned and dried foods. I only put products on the shelves that I have fully researched and would bring home to feed my own dog. The store is also full of <u>wholesome</u> treats – nutritional treats for all dogs, even those with allergies and food sensitivities." (www.thewholesomepetmarket.com).

> The NaturaPet website offers Innova New Puppy Food brand which is touted as "high-protein, <u>wholesome</u> nutrition formulated to meet the unique needs of a growing puppy" and Innova NEW Weight Management Adult Dry Dog Food, which is a "nutrient-rich, <u>wholesome</u> formula" that offers 21% less fat than Innova Adult Dog Food and added L-carnitine to facilitate the metabolism of fat. (www.naturapet.com).

> The Tuffy's Pet Food website advertises that "[f]or over 45 years, dog and cat owners have trusted Tuffy's Pet Foods to be fresh and <u>wholesome</u>….Tuffy's fresh, wholesome pet foods are specially formulated to meet the individual needs of pets, keeping them happier, healthier, and more energetic." (www.tuffyspetfoods.com).

Applicant counters that the addition of the letter "s" to the adjective "wholesome" transforms the word into a newly coined designation with no accepted meaning. As Applicant contends, consumers encountering Applicant's mark need to

Serial Nos. 85598829 and 85598831

engage in some degree of imagination, thought, or perception before making an

association between the invented plural noun **WHOLESOMES** and Applicant's

goods. For this reason, Applicant contends, its proposed mark does not immediately

describe a significant feature of Applicant's "pet food." Applicant relies primarily on

the declaration of Dr. Robert A. Leonard, expert in the field of linguistics,[3] which

states in part:

> From an English language perspective, unlike the word "wholesome," the
> word "**WHOLESOMES**" is a novel, quasi-invented lexical item with no
> accepted meaning. *Id.* at ¶ 13.

> Although apparently derived from the word "wholesome," the word
> "**WHOLESOMES**" cannot be construed as an adjective…. *Id.* at ¶ 14.

> …following a basic application of the normal and accepted rules of English
> grammatical construction, "**WHOLESOMES**" can only be understood to
> be a plural noun without a singular counterpart. That "**WHOLESOMES**"
> is a plural noun, and not an adjective, shifts the sands of cognition for
> anyone encountering the word. The final *s* is meaningful in English as it
> generates a semantic interpretation that "**WHOLESOMES**" is a noun
> (and in particular, a plural noun)…The *s* serves to transform an adjective
> into a newly minted plural noun; it is not merely pluralizing the adjective
> "wholesome." Consequently, in the case of "**WHOLESOMES**," the final "s"
> is a valid and meaningful distinguishing characteristic. *Id.* at ¶ 19.

> That the noun **WHOLESOMES** is an invented word that has novel
> morphological, grammatical, and semantic value is made clear by virtue of
> the fact that no dictionaries contain the *noun* "wholesome" or
> "**WHOLESOMES**." More importantly, "**WHOLESOMES**" cannot be
> found in any dictionary at all, and consequently, cannot be said to have
> any accepted meaning. For English language speakers, linking the
> adjective "wholesome" to "**WHOLESOMES**" would require a leap of
> "metaphorical grammatical understanding" … to process a new lexical

---

[3] Dr. Leonard is a tenured professor of linguistics at Hofstra University who has taught, lectured and written articles on the subject for over 30 years. He earned a Ph.D. in Linguistics from Columbia University with specialties in semantic theory and sociolinguistics. He has been qualified and has testified as an expert in linguistics in various state and federal courts. He also serves as a member of the editorial board of the Oxford University Press series *Language and the Law*. Leonard Declaration ¶ 1-11, Ex. A.

Serial Nos. 85598829 and 85598831

> item that may at first glance appear to be an adjective flouting the rules we all use to understand the English language. *Id.* at ¶ 20.

Thus, as Applicant maintains, while the word "wholesome" is a well-recognized adjective in the English language and appears in dictionaries and common parlance, the pluralized noun version of the word constitutes a unique source indicator for Applicant's own particular brand of "pet food."

Applicant also criticizes the Examining Attorney's reliance on evidence relating solely to the adjective "wholesome" as irrelevant to whether the invented noun is merely descriptive of Applicant's "pet food." While Applicant concedes that the Examining Attorney's evidence demonstrates that the word "wholesome" is used commonly in the pet food industry to inform consumers that the pet food is healthy and conducive to sound health for their pets, Applicant points out that the record is devoid of any evidence related to the third-party use or dictionary entries of the coined term "wholesomes."

In addition, Applicant analogizes to other marks composed of a term that is derived from a descriptive word that, as a result of its novel spelling or use, has been deemed not to be descriptive of the goods. In support thereof, Applicant has made of record the following relevant third-party registrations on the Principal Register:[4]

---

[4] Insofar as Registration No. 2762655 for the mark PET ESSENTIALS for "pet food and cat litter" was cancelled on April 11, 2014, we have not considered it.

In addition, we did not consider Registration No. 3140553. Applicant mistakenly asserted in its brief that the registered mark is SELECTS in plural form; however, the USPTO records show that the mark is SELECT.

Serial Nos. 85598829 and 85598831

> Registration No. 2243779 for the mark MEATIES for "pet foods and pet treats" in International Class 31;
>
> Registration No. 3808209 for the mark SELECT ACTIVES ("SELECT" disclaimed) for "pet foods and pet treats" in International Class 31; and
>
> Registration No. 4329243 for the mark DELECTABLE DELIGHTS for "dog food, cat food, dog treats and cat treats" in International Class 31.

Based on the record before us, we find that the Examining Attorney has satisfied the Office's burden of demonstrating that the term **WHOLESOMES** is merely descriptive when used in connection with "pet food." That is to say, we agree with the Examining Attorney that the coined term **WHOLESOMES** immediately conveys to prospective consumers a quality, feature or characteristic of Applicant's goods, namely, that Applicant's pet food is conducive to the sound health or well-being of the pet.[5] We acknowledge that the record is devoid of any dictionary definitions of the pluralized version of the adjective "wholesome," or for that matter, competitor use of that exact term in the pet food industry. That being said, even though Applicant may indeed be the first and only user of the newly created designation **WHOLESOMES** to identify "pet food," Applicant's proposed mark nonetheless "immediately conveys knowledge of a quality, feature, …or characteristic" of Applicant's goods within the meaning of Trademark Act Section 2(e)(1). Nothing in the statutory language of that provision imposes the requirement

---

[5] Applicant vociferously argues throughout its brief that under *In re Gyulay*, 820 F.2d 1216, 3 USPQ2d 1009 (Fed. Cir. 1987), to be merely descriptive, a mark must describe a "significant" quality, feature, or characteristic of the goods or services. The Federal Circuit's most recent iteration of the test for descriptiveness set forth in *In re Chamber of Commerce, supra*, however, makes no mention of this requirement. In any event, nothing in the record persuades us that wholesomeness is not a significant feature of food products.

Serial Nos. 85598829 and 85598831

that to be merely descriptive, a proposed mark must consist of a commonly used or previously defined word. Rather, the proposed mark must "immediately convey knowledge," and such "knowledge" can be conveyed or communicated to prospective consumers in a number of ways, including by taking a commonly used adjective in the pet food industry and adding the letter "-S." In other words, the essence of the adjective "wholesome" has not been so transformed by the conversion to noun form so as to interfere with the consumer's perception of that term as describing a significant "quality, feature ...or characteristic" of Applicant's particular brand of pet food.

We hasten to add that the pertinent case law imposes no general rule that only marks composed of commonly used or previously defined words may be deemed merely descriptive. *In re Bayer Aktiengesellschaft, supra,* is particularly instructive on this point. In that case, the Federal Circuit affirmed the Board's ruling that the mark ASPIRINA was merely descriptive of applicant's analgesic goods on the grounds that ASPIRINA was simply a variation or misspelling of the generic term "aspirin." The court agreed with the Board's analysis that the close similarity in sound, appearance, and meaning of the mark ASPIRINA to the word "aspirin" immediately conveys the impression to the consuming public that Bayer's analgesics are aspirin-based products.[6] As the court explained:

> *In determining whether ASPIRINA is sufficiently similar to aspirin to render it merely descriptive of analgesic goods, the relevant features of the*

---

[6] The underlying Board decision did not consider the doctrine of foreign equivalents as argued by the Examining Attorney. Hence the Board declined to engage in a foreign equivalents analysis given its finding that the record demonstrates that ASPIRINA is a merely descriptive variation of aspirin.

Serial Nos. 85598829 and 85598831

> *mark are considered including appearance, sound, and meaning.* The
> Board found that ASPIRINA and aspirin are sufficiently close in
> appearance, sound, and meaning that "*[t]he mere addition of the letter 'A'
> at the end of the generic term 'aspirin' is simply insufficient to transform
> ASPIRINA into an inherently distinctive mark for analgesics.*" *Final
> Decision*, slip. op. at 8, 11. Substantial evidence supports this finding. The
> appearance and meaning of ASPIRINA and aspirin are similar. Adding an
> "a" to aspirin results in virtually no distinction with respect to the visual
> impressions of the terms. Importantly, both terms will be used in
> association with the same analgesic goods in this country. There are,
> however, some differences in sound. ASPIRINA contains four syllables
> and aspirin contains two or three syllables (depending on how it is
> pronounced). ASPIRINA also contains different syllables and the
> emphasis is on the third syllable for ASPIRINA, whereas the emphasis is
> on the first syllable for aspirin. *When the mark ASPIRINA is considered
> as a whole, the significant similarities in appearance and meaning of
> ASPIRINA and aspirin demonstrate that the Board's finding that
> ASPIRINA is merely descriptive of analgesic goods is supported by
> substantial evidence.*

*Id.* at 1831-32 (emphasis added).

Applying the same principles here, when we consider the appearance, sound,

and meaning of applicant's proposed mark **WHOLESOMES**, it bears "significant

similarities" to the adjective "wholesome." The addition of the letter "s" and

transformation of the term from adjective to noun fails to render the term

**WHOLESOMES** into an inherently distinctive mark for "pet food." Consumers

encountering Applicant's mark would still perceive it as meaning that Applicant's

pet food is wholesome in nature by promoting the pet's sound health or well-being.

Indeed, in *In re Interco Inc.*, 29 USPQ2d 2037 (TTAB 1993), the Board affirmed the

examining attorney's refusal to register the mark FLORSHEIM LIGHTWEIGHTS

and design for shoes in the absence of a disclaimer of LIGHTWEIGHTS on an

evidentiary record quite similar to the one presented here. In *Interco,* the examining

Serial Nos. 85598829 and 85598831

attorney submitted a dictionary definition of the adjective "lightweight," copies of two third-party registrations in which the word LIGHTWEIGHT was disclaimed, and copies of excerpts from various recent newspaper stories showing uses of the word "lightweight" in relation to shoes. *Id.* at 2038. As the Board reasoned in its decision:

> We concur with the Examining Attorney that the above evidence, especially the dictionary definition and newspaper excerpts, is sufficient to establish that not only is the word "LIGHTWEIGHT," as applicant has admitted, merely descriptive when applied to shoes, but so is the term "LIGHTWEIGHTS". The latter, we believe, would clearly be regarded by customers and prospective purchasers of footwear as merely describing shoes which are lighter in weight than other kinds of shoes.
>
> As a final consideration, we observe that even if applicant has been the first and/or, unlike its competitors, is presently the only user of the term "LIGHTWEIGHTS" in connection with shoes, such fact cannot alter the merely descriptive significance of the term. [Internal citations omitted]. Such fact, in short, is simply not dispositive where, as here, the term "LIGHTWEIGHTS" unequivocally projects a merely descriptive connotation that applicant's shoes are of less than average weight. [Internal citation omitted].

*Id.* at 2039.

The reasoning set forth above applies with equal force here. While Applicant may indeed be the first, and only user of the coined term **WHOLESOMES** used in connection with "pet food," it nonetheless "projects a merely descriptive connotation" that Applicant's pet food is salutary for pets. *See id.*

As to the third-party registrations for pluralized marks for pet food and pet products referenced above, even if these prior registrations had some characteristics similar to applicant's application, the allowance of such prior registrations does not

Serial Nos. 85598829 and 85598831

bind the Board. *See In re Nett Designs Inc.*, 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001).

Finally, with respect to Applicant's expert's opinion that a consumer would have to engage in "a leap of 'metaphorical grammatical understanding'" in order to comprehend Applicant's mark, we are not persuaded that ordinary consumers would apply to the mark the kind of technical analysis that an expert linguist might perform. Rather, we believe a consumer's apprehension of the descriptive meaning of the mark would be immediate.

In sum, we find that the Office has met its burden of demonstrating that Applicant's proposed mark **WHOLESOMES**, when used in connection with "pet food," is merely descriptive.

**Decision as to Serial No. 85598829:** The refusal to register the mark **SPORTMIX WHOLESOMES** in the absence of a disclaimer of **WHOLESOMES** is affirmed. However, this decision will be set aside if, within two months of the mailing date of this decision, Applicant submits to the Board a proper disclaimer of **WHOLESOMES**. *See* Trademark Rule 2.142(g). The standardized disclaimer format is as follows:

> No claim is made to the exclusive right to use **WHOLESOMES** apart from the mark as shown.

**Decision as to Serial No. 855988331:** The descriptiveness refusal to register Applicant's mark **WHOLESOMES** is affirmed.

# **CERTIFICATE OF COMPLIANCE**

1.       This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 29(d) and 32(a)(7)(B) because it contains 4,797 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

2.       This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Word in Times New Roman 14 point font.

BLANK ROME LLP

Date:      March 6, 2015

Timothy D. Pecsenye
Bradford C. Craig
BLANK ROME LLP
One Logan Square
130 N. 18th Street
Philadelphia, PA 19103-6998
(215) 569-5619 (t)
(215) 832-5619 (f)
E-Mail: Pecsenye@BlankRome.com

*Attorneys for Appellant*
*Midwestern Pet Foods, Inc.*

24

## **CERTIFICATE OF SERVICE**

I, Bradford C. Craig, do hereby certify that on March 6, 2015, I electronically filed the foregoing BRIEF OF APPELLANT MIDWESTERN PET FOODS, INC. with the Clerk of Court for the United States Court of Appeals for the Federal Circuit by using the CM/ECF system, which constitutes service pursuant to Federal Rules of Appellate Procedure 25(a)(2)(D) and 25(c), Federal Circuit Rule 25(a), and the Court's Administrative Order Regarding Electronic Case Filing 6(A) (May 17, 2012).

/s/ Bradford C. Craig
Bradford C. Craig
BLANK ROME LLP
One Logan Square
130 N. 18th Street
Philadelphia, PA 19103-6998
(215) 569-5378 (t)
(215) 832-5378 (f)
bcraig@blankrome.com

*Attorney for Appellant*
*Midwestern Pet Foods, Inc.*

25